UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Travis P. Perry,
Plaintiff,

v.

City of Waterville, Minnesota;
Waterville Planning and Zoning Commission;
Jason Moran, in his individual and official capacities;
Teresa Hill, in her individual and official capacities;

Case No. 0:25-cv-03352-LMP/LIB

**AMENDED COMPLAINT**
(42 U.S.C. § 1983; Minn. Stat. ch. 13)
(Bench Trial Requested)

---

## I. INTRODUCTION

1. This is a civil-rights action under 42 U.S.C. § 1983 and Minnesota law.

2. Plaintiff Travis P. Perry is a Minnesota resident, U.S. Army veteran, and "social equity" applicant under Minnesota's cannabis statute. In early 2025, he sought to operate a cultivation-only cannabis microbusiness as a Level 2 home occupation from his property at 529 Mallory Street North, Waterville, Minnesota, with no retail sales from his home.

3. At that time, the City of Waterville's zoning code allowed Level 2 home occupations in the R-2 residential district by conditional use permit ("CUP"), and the City's own attorney acknowledged on the record that the City legally could approve Plaintiff's proposed use as a conditional use.

4. Instead of providing a fair and lawful process, Defendants:

a. Formally denied Plaintiff's request and voted "not to allow [his use] as a use, as a conditional use permit," thereby foreclosing any CUP path for his proposed cultivation-only home occupation;

b. Shortly thereafter drafted and adopted a new "home occupation" ordinance targeted at Plaintiff that explicitly banned the "growing" and sale of cannabis products as home occupations; and

c. Mishandled Plaintiff's data-practices requests in violation of Minn. Stat. ch. 13, withholding non-privileged public data and prematurely closing his requests.

5. Before ever approaching the City, Plaintiff had already applied to the Minnesota Office of Cannabis Management ("OCM") for microbusiness pre-approval as a veteran social-equity applicant. He reasonably expected pre-approval under the statute and told City officials that his state application was pending and that state regulators would inspect and oversee the site after zoning approval.

6. OCM's processing of social-equity applications was later temporarily halted by a court order in separate litigation against the State of Minnesota, which delayed issuance of Plaintiff's pre-approval even though he otherwise met the criteria.

7. After the City's denial and ordinance change, and once OCM resumed processing following the court-ordered pause, OCM issued microbusiness pre-approval to Plaintiff personally as a veteran social-equity applicant, confirming his eligibility under state law. The City's actions are the only reason he was prevented from operating his planned Year-1 business in Waterville and from using his home for lawful cultivation.

8. Defendants' actions violated Plaintiff's rights under the Fourteenth Amendment (procedural due process and equal protection) and the First Amendment (retaliation for petitioning), and violated the Minnesota Government Data Practices Act. Plaintiff seeks money damages, declaratory relief, and statutory remedies, but does not seek injunctive relief requiring the City to allow any business operations in Waterville or Le Sueur County.

## II. JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff's federal claims arise under the United States Constitution and 42 U.S.C. § 1983.

10. The Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367 because they form part of the same case or controversy as the federal claims.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because all Defendants reside in Minnesota and the events giving rise to these claims occurred in Waterville, Minnesota.

## III. PARTIES

12. Plaintiff Travis P. Perry is a natural person domiciled in Minnesota. In connection with his microbusiness license application, and as required by OCM, Plaintiff formed a single-member LLC to hold the license. Plaintiff is the sole owner and decision-maker of that LLC. All OCM pre-approval, business planning, and injuries alleged in this case relate to Plaintiff veteran status and personally as the sole member. Plaintiff asserts his own constitutional and economic injuries as the individual applicant and owner; he does not assert any separate or independent claims on behalf of the LLC as a distinct entity.

13. Defendant City of Waterville, Minnesota ("City") is a Minnesota municipal corporation responsible for adopting and enforcing the ordinances and decisions challenged in this action.

14. Defendant Waterville Planning and Zoning Commission ("P&Z") is an arm of the City responsible for making recommendations and decisions concerning zoning, conditional uses, and home occupations. It is named to ensure complete relief; to the extent it is not a separate suable entity, its actions are treated as actions of the City.

15. Defendant Jason Moran was at all relevant times the City Attorney for Waterville. He is sued in his individual capacity for damages and in his official capacity for declaratory relief.

16. Defendant Teresa Hill was at all relevant times the City Administrator/Clerk for Waterville. She is sued in her individual capacity for damages and in her official capacity for declaratory relief.

17. Additional City officials, staff, and/or P&Z or Council members who participated in, directed, or ratified the unconstitutional conduct alleged herein. Many of these individuals are identified by name in the meeting agendas and transcripts.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's background, OCM application, and business plan

18. Plaintiff is a U.S. Army veteran and a long-time organic cultivator. He qualifies as a "social equity" applicant under Minnesota's cannabis statute.

19. In 2024, Minnesota enacted a regulatory scheme for cannabis licenses, including microbusiness licenses. The City of Waterville adopted Ordinance 116 and related ordinances incorporating Minnesota's cannabis definitions and authorizing retail and manufacturing cannabis-related uses as conditional uses in certain districts.

20. Before approaching the City about zoning, Plaintiff submitted an application to OCM for microbusiness pre-approval as a veteran social-equity applicant. He reasonably expected pre-approval under the statute and told City officials that his state application was pending and that state regulators would inspect and oversee the site after zoning approval. OCM's processing of social-equity applications was temporarily halted by a court order in separate litigation, which delayed issuance of Plaintiff's pre-approval even though he otherwise met the criteria.

21. Plaintiff developed a phased business plan:

a. **Year 1 (2025)** – a cultivation-only microbusiness from the attached or detached garage at his residential property at 529 Mallory Street North in Waterville, producing cannabis flower for wholesale only, with no retail sales from the residence, no customer traffic, and robust odor and security controls; and

b. **Years 2 and beyond** – relocation of operations to a fully compliant commercial site in an industrial district, including retail and expanded cultivation, financed in significant part by Year-1 income.

22. Plaintiff's initial Year-1 plan relied on the City's existing zoning framework for home occupations and conditional uses in the R-2 district, as described below.

**B. Zoning ordinances in effect at the time of denial**

23. Plaintiff's property at 529 Mallory Street North is zoned R-2 Medium Density Residential and lies within the Flood Fringe overlay district.

24. At all relevant times through at least February 19, 2025, the City's zoning code allowed home occupations in the R-2 district. The code distinguished between Level 1 home occupations (permitted by right) and Level 2 home occupations (permitted in R-2 by conditional use permit).

25. Under the pre-amendment code, Level 2 home occupations were allowed in R-2 if approved by CUP, based on neutral criteria such as impact on neighboring properties, traffic, noise, and nuisances. The code did not contain any categorical prohibition on the "growing" of cannabis as a home occupation.

26. Separate City ordinances authorized cannabinoid/cannabis product manufacturing and retail as conditional uses in the City's industrial districts (such as IL and I-2).

27. At the time Plaintiff approached the City in January 2025, the City's ordinances therefore allowed a path for Level 2 home occupations in R-2 by CUP and did not yet contain a blanket ban on cannabis cultivation as a home occupation.

**C. Plaintiff's request and the P&Z decision**

28. On or about January 13, 2025, Plaintiff submitted a written request to the City describing his proposed cultivation-only microbusiness, explaining that operations would occur entirely indoors in his garage, with no retail sales from the residence, minimal traffic, extensive odor control, and security measures. He also informed the City that his OCM microbusiness application as a social-equity applicant due to his veteran status was already pending.

29. On or about February 4, 2025, Plaintiff submitted a further letter and appeared before the City Council. The Council's agenda identified the matter as "Home-Based Cannabis Micro Business Amendment Request – Travis Perry." The Council referred the matter to the Planning and Zoning Commission.

30. Plaintiff made clear in his written materials and public comments that he was seeking a lawful zoning path, including by conditional use permit, consistent with the City's existing Level-2 home-occupation framework, and that he was not seeking to sell cannabis or any other products at retail from his residence.

31. On February 19, 2025, the P&Z Commission held a public meeting at which Plaintiff's request was discussed. Defendant Moran presented the item to the Commission and described Plaintiff's proposal.

32. At that meeting, Moran acknowledged that the City's code already allowed cannabis manufacturing and retail sales as conditional uses in industrial districts, and that the City could, as a matter of law, treat Plaintiff's cultivation-only home occupation as a conditional use.

33. Moran stated in substance that the City could legally make Plaintiff's use a conditional use and impose extensive conditions, but then told the Commission that, "legally, can we [allow it]? Yes. Should we? No."

34. Moran repeatedly compared Plaintiff's proposed cultivation-only microbusiness to manufacturing gunpowder, fireworks, or dynamite in a residential neighborhood and warned the Commission about imagined "worst-case scenarios." These analogies were not based on any evidence about Plaintiff's actual plan.

35. During the same meeting, the Commission did not apply the existing CUP criteria to Plaintiff's specific plan, did not analyze whether conditions could mitigate any impacts, and did not provide Plaintiff with a meaningful opportunity to have his proposed use evaluated under the existing Level-2 framework.

36. At the February 19, 2025 meeting, after discussion and following Defendant Moran's recommendations, the Planning and Zoning Commission voted to deny Plaintiff's request to change the zoning so that his cultivation-only microbusiness would be allowed as a permitted use in the R-2 district and, in the same motion, further stated that it would "not allow [Plaintiff's use] as a use, as a conditional use permit."

37. By that vote, the City closed off both avenues that would otherwise have been available under its requested zoning change to treat Plaintiff's use as a permitted residential use and under their ordinances as Level-2 home occupation subject to a conditional use permit. In light of that categorical decision, and the statements made on the record that Plaintiff's cultivation microbusiness should not be allowed from a residence even if it could be treated as a conditional use, Plaintiff reasonably understood that any formal CUP application on a City form would be denied and that further resort to the CUP process would be futile. This understanding was later confirmed when, as alleged below, the City amended its "home occupation" ordinance to exclude "growing" cannabis altogether.

38. During the meeting, P&Z Chairperson Howard Mack remarked that Plaintiff could "do whatever [he] wants right now" and "go down the road of forgiveness instead of permission," suggesting that Plaintiff should operate without permits rather than pursuing lawful approvals. This comment, made by the presiding P&Z official, underscored the City's refusal to provide a fair process and its willingness to push Plaintiff toward extra-legal options instead of applying its own CUP framework.

**D. Retaliatory "home occupation" amendment**

39. Following the P&Z denial, Moran drafted an amendment to the City's "Home Occupation" ordinance and circulated it internally. In related communications he referred to a "person of interest in town that may try to do something clever," referring to Plaintiff.

40. The draft amendment redefined "Home Occupation" and expressly excluded from that definition any "manufacturing, assembly of, growing of, packaging for sale of, or retail sale of" cannabis product, cannabis concentrate, cannabis flower, cannabinoid products, and certain other items such as fireworks, explosives, and firearms.

41. On or about April 1, 2025, the City Council held a meeting at which Moran presented the proposed amendment. He stated that the amendment was intended to "get ahead" of undesirable home-based occupations in residential areas and expressly referenced cannabis-related activity.

42. On or about May 6, 2025, after a second reading, the City adopted the amended "Home Occupation" ordinance. The amendment permanently barred any "growing" of cannabis or cannabinoid products as a home occupation, even where impacts could be addressed through CUP conditions.

43. The timing, language, and internal commentary surrounding this ordinance demonstrate that it was drafted and adopted in direct response to Plaintiff's requests and speech, and that it was aimed at preventing Plaintiff from ever obtaining approval for his cultivation-only home occupation.

**E. OCM pre-approval and damages**

44. After the City's denial and the adoption of the amended ordinance, and once OCM resumed processing after the court-ordered pause in social-equity licensing, OCM granted microbusiness pre-approval to Plaintiff personally as a veteran social-equity applicant.

45. OCM's pre-approval confirmed that Plaintiff met the criteria for a microbusiness license under state law and would have been permitted to operate a cultivation-only microbusiness from his property if local zoning approvals had been granted. On January 9, 2025, an OCM Customer Service Supervisor emailed Plaintiff and confirmed that, "While OCM verifies a business meets local zoning compliance as a step toward licensing, OCM does not mandate what those zoning requirements are. Applicants will want to contact the local unit of government in the area in which they wish to conduct business to determine what those zoning requirements will be, as they may vary by city." This communication confirmed that zoning requirements for Plaintiff's microbusiness were determined by the City of Waterville, not by OCM, and that OCM would simply verify compliance with whatever local zoning requirements the City imposed.

46. As a direct result of the City's denial and subsequent amendment, Plaintiff lost the opportunity to operate his planned Year-1 cultivation-only home occupation in Waterville and to use the net income and verifiable taxes from that first year to finance relocation and expansion to a commercial site in an industrial district in Year 2 and beyond.

47. Plaintiff has prepared detailed damage calculations, supported by exhibits, that quantify his Year-1 net income and multi-year expansion losses based on conservative assumptions, including realistic yields, market-based pricing, operating costs, and financing sources (including supporting affidavits from experienced cultivators and prospective investors), demonstrating that his projections are realistic and non-speculative.

### F. Data-practices requests and violations

48. In the spring of 2025, Plaintiff submitted written requests under the Minnesota Government Data Practices Act (MGDPA), Minn. Stat. ch. 13, seeking public records concerning his application, the P&Z proceedings, the new ordinance, and communications with the City Attorney and other City officials.

49. The City acknowledged receipt of these requests but improperly withheld non-privileged public data, broadly invoked attorney-client privilege for entire categories of documents, and declared Plaintiff's request "complete" and "closed" while still withholding responsive data.

50. The City's responses failed to comply with the requirements of Minn. Stat. § 13.03 and related provisions, which require prompt, thorough, and good-faith responses to requests for public government data.

51. The City's mishandling of Plaintiff's data-practices requests impeded his ability to obtain information about the City's decision-making, to correct inaccuracies, and to timely challenge the City's actions.

### G. Municipal policy and final policymakers

52. The Planning and Zoning Commission and the City Council acted as final policymakers for the City of Waterville with respect to land-use and zoning decisions, including the availability of conditional uses in the R-2 district and the content of the City's home-occupation ordinance. The February 19, 2025 Planning and Zoning Commission decision "not to allow [Plaintiff's use] as a use, as a conditional use permit" and the subsequent adoption of the amended "Home Occupation" ordinance were acts of municipal policy attributable to the City of Waterville for purposes of 42 U.S.C. § 1983.

---

## V. CLAIMS FOR RELIEF

**COUNT I – FOURTEENTH AMENDMENT**

**PROCEDURAL DUE PROCESS**
42 U.S.C. § 1983
(Against All Defendants)

53. Plaintiff realleges paragraphs 1–52.

54. At the time Plaintiff requested approval for his cultivation-only home occupation, the City's zoning code provided a Level-2 home-occupation and conditional-use-permit

framework in the R-2 district. This framework created a legitimate claim of entitlement to a fair, non-arbitrary process and consideration under the existing criteria.

55. Defendants deprived Plaintiff of that protected interest without due process of law by:

a. Formally denying his request to change the zoning to allow his use as a permitted use and voting "not to allow [his use] as a use, as a conditional use permit," thereby eliminating both the permitted-use and CUP paths for his use;

b. Refusing to apply existing CUP standards to Plaintiff's specific plan, instead relying on speculative "worst-case" analogies to explosives and dynamite; and

c. Drafting and adopting a targeted ordinance amendment that retroactively foreclosed Plaintiff's proposed use as a home occupation.

56. After the P&Z vote, any further administrative remedy—such as submitting a formal CUP application—was futile because Defendants had already decided that Plaintiff's use would not be considered as a conditional use and had expressly closed both the permitted-use and conditional-use paths.

57. Defendants' actions were arbitrary and capricious, motivated by hostility rather than by neutral application of zoning criteria, and deprived Plaintiff of a meaningful opportunity to pursue a lawful land-use approval process.

58. By depriving Plaintiff of a fair and lawful process without adequate procedural safeguards, Defendants violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment, actionable under 42 U.S.C. § 1983.

59. As a direct and proximate result, Plaintiff has suffered economic loss, emotional distress, and other damages in an amount to be proven at trial.

---

**COUNT II – FOURTEENTH AMENDMENT**

**EQUAL PROTECTION (CLASS-OF-ONE / IRRATIONAL DISCRIMINATION)**
42 U.S.C. § 1983
(Against All Defendants)

60. Plaintiff realleges paragraphs 1–59.

61. The City's zoning code allows a variety of Level-2 home occupations in the R-2 district, including businesses that create potential impacts such as traffic, deliveries, or other externalities, so long as those impacts can be addressed through conditions.

62. Plaintiff's proposed use—a cultivation-only cannabis microbusiness operated entirely indoors in a garage, with no retail at the residence, minimal traffic, odor control, and security measures—was similarly situated in all relevant respects to other Level-2 home occupations that the City allows.

63. Defendants intentionally treated Plaintiff differently from similarly situated persons by:

a. Voting to deny his request and to refuse to allow his use as a conditional use permit, while leaving other Level-2 home occupations available to others through the CUP process;

b. Drafting and adopting an ordinance amendment that expressly excluded cannabis cultivation and a concise list of disfavored items (firearms, explosives, fireworks) from the definition of "home occupation," thereby singling out Plaintiff's class of use; and

c. Doing so in direct response to Plaintiff's request, using inflammatory analogies to explosives and referring to Plaintiff as a "person of interest" who might "do something clever."

64. Defendants lacked any rational basis for this differential treatment. Any legitimate concerns about safety, security, or nuisance could have been addressed by imposing conditions under the CUP process, as with other Level-2 home occupations.

65. To Plaintiff's knowledge, at the time of his request he was the only person seeking City approval for a cannabis business or cannabis-related home occupation in Waterville. By selectively and categorically excluding Plaintiff's cultivation-only use, while allowing other similarly intensive home occupations to proceed through the Level-2/CUP framework, Defendants acted irrationally and with animus toward Plaintiff and toward cannabis operators.

66. By intentionally and irrationally treating Plaintiff differently from others similarly situated without a rational basis, Defendants violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment, actionable under 42 U.S.C. § 1983.

67. As a direct and proximate result, Plaintiff has suffered damages in an amount to be proven at trial.

---

**COUNT III – FIRST AMENDMENT**

**RETALIATION FOR PROTECTED PETITIONING AND SPEECH**
42 U.S.C. § 1983
(Against All Defendants)

68. Plaintiff realleges paragraphs 1–67.

69. Plaintiff engaged in constitutionally protected activity by:

a. Submitting written requests to the City concerning his proposed cultivation-only microbusiness and zoning;

b. Speaking at public meetings and advocating for a lawful path for his use;

c. Submitting public-records requests under the MGDPA; and

d. Providing notice of his intent to pursue legal action to vindicate his rights.

70. In response to Plaintiff's protected speech and petitioning, Defendants took adverse actions that would chill a person of ordinary firmness from continuing to engage in such activities, including:

a. Denying his request and voting not to allow his use as a conditional use permit;

b. Drafting and adopting a targeted "home occupation" amendment aimed at permanently preventing Plaintiff from operating his cultivation-only microbusiness in Waterville; and

c. Refusing to take corrective action after being notified of the harms caused by their actions.

71. The chronology of events, Defendants' public and private statements, and the framing of Plaintiff as a "person of interest" whose proposal should be stopped, demonstrate that Defendants' adverse actions were substantially motivated by Plaintiff's protected petitioning and criticism.

72. By taking adverse zoning and legislative actions in retaliation for Plaintiff's protected First Amendment activity, Defendants violated Plaintiff's rights under the First Amendment, actionable under 42 U.S.C. § 1983.

73. As a direct and proximate result, Plaintiff has suffered damages in an amount to be proven at trial.

---

**COUNT IV – MINNESOTA GOVERNMENT DATA PRACTICES ACT**

Minn. Stat. § 13.08
(Against City of Waterville and Teresa Hill)

74. Plaintiff realleges paragraphs 1–73.

75. Plaintiff made data-practices requests to the City pursuant to Minn. Stat. ch. 13, seeking public government data relating to his application, the P&Z proceedings, the new ordinance, and communications among City officials.

76. Under Minn. Stat. § 13.03 and related provisions, the City was required to respond promptly and to provide access to public government data that were not subject to a valid statutory exception. The City, acting through Defendant Hill and others, violated the MGDPA by:

a. Withholding non-privileged public data;

b. Invoking the attorney-client exception in an overbroad manner to conceal entire categories of communications;

c. Failing to explain the basis for withholding records as required by the statute; and

d. Declaring Plaintiff's requests "complete" and "closed" while still withholding responsive data.

Defendants' conduct violated Minn. Stat. § 13.03, subd. 3, by failing to provide prompt and complete access to public government data and by refusing to adequately explain the legal basis for withholding responsive data, and misused Minn. Stat. § 13.393 by treating all communications involving the City Attorney as categorically exempt rather than limiting withholding to data that actually met the narrow statutory criteria.

77. The City's violations were at least negligent and, on information and belief, were willful.

78. As a result of these violations, Plaintiff has incurred damages, including time and expense, and has been hindered in his ability to challenge the City's actions.

79. Under Minn. Stat. § 13.08, Plaintiff is entitled to actual damages, costs, disbursements, and, for willful violations, exemplary damages, as well as reasonable attorney's fees should he later obtain counsel.

---

## VI. PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants and award the following relief:

a. Compensatory damages in an amount to be proven at trial for economic loss, emotional distress, and other injuries caused by Defendants' unlawful actions;

b. Exemplary damages under Minn. Stat. § 13.08 for any willful violations of the Minnesota Government Data Practices Act;

c. A declaration that Defendants' actions, as alleged above, violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution and under Minnesota law;

d. Plaintiff's costs and disbursements in this action, and reasonable attorney's fees should he later retain counsel, pursuant to 42 U.S.C. § 1988 and Minn. Stat. § 13.08;

e. Pre- and post-judgment interest as allowed by law; and

f. Such other and further relief as the Court deems just and equitable.

Plaintiff does not seek injunctive relief requiring the City to allow any business operations in Waterville or Le Sueur County.

## VII. TRIAL

80. Plaintiff respectfully requests a bench trial on all issues so triable.

Dated: __Dec,__ 12,__ 2025__

Respectfully submitted,

Travis P. Perry
Plaintiff, pro se

[529 N Mallory St]
[Waterville, MN, 56096]
[507-201-5199]
[mn.snoeeons@gmail.com]