**UNITED STATES DISTRICT COURT**
**IN THE**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Travis Perry, | ) **Civil Action No.: 0:25-cv-3352-LMP-LIB** |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **DEFENDANTS' MEMORANDUM OF** |
| | ) **LAW IN SUPPORT OF ITS RULE** |
| City of Waterville, official capacity; | ) **12(b) MOTION TO DISMISS** |
| Jason Moran, in his official and | ) **PLAINTIFF'S AMENDED** |
| individual capacities; Teresa Hill, in her | ) **COMPLAINT** |
| official and individual capacities; and | ) |
| Waterville Zoning Commission, official | ) |
| capacity. | |
| | |
| Defendants. | |

## INTRODUCTION

Plaintiff Travis Perry desired to operate a cannabis cultivation business from his home garage. Such a business is forbidden by both City of Waterville zoning ordinances and notice-and-comment regulations from the State of Minnesota. In January 2025, Plaintiff suggested that the Defendant City of Waterville amend its zoning code to allow at-home cannabis businesses. The City of Waterville City Council duly considered the issue, and declined to amend its code. Plaintiff now alleges that this violated his civil rights.

The City filed a motion to dismiss Plaintiff's lawsuit on November 21, 2025. On December 12, 2025, Plaintiff filed an amended complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B), rendering the City's initial motion moot. However, Plaintiff's amended complaint fails to correct the deficiencies within his original complaint—and indeed, brings more deficiencies to the forefront. Plaintiff's alleged injury is still traceable to

Minnesota regulations, not city action. Plaintiff attempts to assert claims pro se and in his own name on behalf of an LLC that actually holds his business pre-approval. And Plaintiff has still failed to plead any claim upon which relief may be granted for any of his counts. Accordingly, Defendants City of Waterville; Jason Moran, in his official and individual capacities; Teresa Hill, in her official and individual capacities; and Waterville Zoning Commission (collectively "Defendants" or "City") respectfully request dismissal of all counts pursuant to Fed. R. Civ. P. 12(b)(1) & (b)(6).

## FACTS[1]

Plaintiff Travis Perry is a resident of the City of Waterville. Amended Complaint, Docket No. 47 (hereinafter, "Compl.") ¶¶ 2, 11. Plaintiff hoped to open a cannabis business operating from his home within the City. *Id.* ¶ 2. Specifically, Plaintiff hoped to commercially cultivate cannabis from his garage. *Id.* ¶ 21(a).

## MINNESOTA CANNABIS LICENSING

Cannabis businesses are new and tightly regulated by Minnesota law. Cannabis businesses are controlled by Minnesota statutes, Minn. Stat. Ch. 342, and implementing regulations, Minn. R. Ch. 9810. These regulations are overseen by a state-level regulatory agency, the Office of Cannabis Management ("OCM"). Minn. Stat. § 342.02. To operate, all cannabis businesses must comply with all applicable state regulations, and obtain a license issued by OCM. Minn. Stat. § 342.10. In addition to state regulations, cannabis businesses are also subject to regulation by local governments such as cities and counties.

---

[1] For purposes of this motion only, Defendants accepts the facts alleged in the Complaint as true.

Minn. Stat. § 342.13. For example, certain types of cannabis business must register with their local government before operating. Minn. Stat. § 342.22. Municipalities cannot ban all operation of cannabis businesses, but all cannabis businesses, regardless of type of operations, are subject to municipal zoning regulations. Minn. Stat. § 342.13(b)–(c). The City allows manufacture and sales of cannabis within its IL and I-2 districts. City Code §§ 150.14 & 150.15; Hill. Aff. Exs. E-1 & E-2.

To acquire a cannabis business license, prospective businesses must first submit an application to OCM. Minn. Stat. § 342.14. This application requires detailed information, but does not require final commitment of where the business will operate or involve OCM review of a particular location. *Id.* subd. 1. If an applicant successfully submits all required initial information, then OCM may issue the applicant a "preliminary approval" of their license. *Id.* subd. 5. This does not involve any consideration of an actual business address. *See* Minn. Stat. § 342.14(4) ("[A]n applicant is not required to secure a physical premises for the business at the time of application."). After the applicant has preliminary approval, the applicant can then move to secure a final business location. This includes submitting their proposed location to the relevant municipal government. Minn. Stat. § 342.13. The municipal government then analyzes the proposed business location, and certifies to OCM whether the proposed location meets all relevant local controls, including zoning ordinances. *Id.* After submission and approval of the final location by the municipal government, OCM independently verifies all detail of the business for compliance with state law and OCM regulations. Minn. Stat. § 342.14, subd. 6. Only if the business complies with all necessary items does OCM issue a final license authorizing actual

business operations. *Id*. The business cannot operate or make any purchases or sales until the final license has been issued. *Id*.

OCM regulations address home cannabis businesses. Specifically, the agency forbids them entirely. Minn. R. 9810.1100, subp. 4. And OCM regulations separately and specifically forbid commercial cultivation in dwellings. Minn. R. 9810.2000, subp. 8(A). A "dwelling" means a "physical structure where people live," including any "type of residential structure." Minn. R. 9810.0200, subp. 22. Plaintiff nevertheless hoped to operate a home-based cannabis microbusiness. Compl. ¶ 21(a). A microbusiness is a license type allowing for a degree of vertical integration, with a single business potentially able to undertake cultivation, manufacturing, and retail sales activity (subject to caps on the size of each type of activity). Minn. Stat. § 342.28.

Plaintiff repeatedly mentions in his complaint that he is a "social equity applicant." *E.g.*, compl. ¶ 20. Some types of cannabis business licenses are available only in limited number. Minn. Stat. § 342.14, subd. 1b. For those business types, some of the limited available licenses are set aside for applicants meeting certain social equity criteria. *Id*. However, microbusinesses are not one of the license types only available in limited numbers. Plaintiff's social equity applicant status has limited, if any, impact on his application. Minn. Stat. § 342.14, subd. 1b. All applicants must still demonstrate compliance with all legal requirements; approval of a business application is not automatic. Minn. Stat. § 342.14, subd. 5.

Plaintiff incorporated an LLC,[2] of which he is the sole member. Compl. ¶ 12. The LLC applied for and received a preliminary approval from OCM for a microbusiness license on April 24, 2025. *Id*. ¶ 4. The LLC has never submitted any proposed location, including Plaintiff's residence, to the City for review as required under Minn. Stat. § 342.13.

## CITY HOME OCCUPATION REGULATION

Plaintiff's property within the City serves as his residence, and is zoned R-2 and subject to the Flood Fringe (FF) overlay district. Hill Aff. ¶2. The R-2 zone generally only allows for residential activity, and not businesses. *See* City Code § 150.07(B). The City zoning code allows certain commercial activities to occur within residences, known as a home occupation. The City classifies potentially permissible home occupations as either Level 1 or Level 2. Level 1 home occupations are minimally intensive uses, which for example employ not more than one person, create no detectable change to the premises, and create no demand on utilities beyond a normal residence without a home occupation. City Code § 150.03(Q)(1). Level 2 home occupations are uses that do not meet the standards for Level 1, but that still create minimal impacts by, for example, producing no noise, glare, or odor detectable off the premises and producing no "special or hazardous wastes that require special treatment." City Code § 150.03(Q)(2).

Level 1 home occupations are permitted uses in the R-2 zoning district. City Code § 150.07(B). Level 2 home occupations are allowed within the R-2 district only with the

---

[2]    Plaintiff does not provide the name of the LLC in his complaint. The City therefore refers to the LLC as "the LLC."

issuance of a Conditional Use Permit (CUP). City Code § 150.07(C). City zoning code does not allow for the establishment of home occupations not meeting the definition of Level 1 or Level 2. *See* City Code § 150.03(Q)(4) (prohibiting the expansion of non-conforming home occupations). To obtain a CUP, residents must submit a written application on the City's application form and pay an application fee, as well as submitting all "written and graphic materials" necessary to explain the proposed use and demonstrate that the application meets all necessary standards. City Code § 150.19.[3]

## PLAINTIFF'S ZONING AMENDMENT REQUEST

In January 2025—prior to obtaining preliminary approval for his microbusiness from OCM—Plaintiff submitted a letter to the Waterville City Council. *See* Hill Aff. Ex. A-1, at 42. Although he alleges that he subjectively intended the letter to constitute an application for a home occupation CUP, compl. ¶ 30, the actual text of Plaintiff's letter requested that the City amend its zoning code to allow home-based cannabis businesses—such as the one pursued by the LLC—as a permitted use. *See* doc. 1-2, at 21.[4] Neither

---

[3]    The CUP application form is available publicly on the City's website, https://cityofwaterville.com/UserFiles/File/Forms/Conditional%20Use%20Permit.pdf (last visited Nov. 24, 2025).

[4]    Plaintiff attached his letter to his original complaint. *See* doc. 1-2 at 20–21 (note that the two pages of the letter have been filed in reverse order). In deciding a motion to dismiss, the Court may consider materials that are "necessarily embraced by the pleadings" without converting the motion to one for summary judgment. *Northland Baptist Church of St. Paul v. Walz*, 37 F.4th 1365, 1370 (8th Cir. 2022) (quotation omitted). Plaintiff directly incorporates his letter into the Amended Complaint, ¶ 28. Further, items submitted officially to the City Council are maintained in the public record, and the Court may also consider public record information in deciding a motion to dismiss. *Northland Baptist Church*, 37 F.4th at 1370.

6

Plaintiff nor the LLC submitted a CUP application form or CUP application fee. *Id*. The City considered Plaintiff's letter as a suggested zoning policy change. The City Council discussed the letter at a meeting on February 4, 2025, referring it to the Planning and Zoning Commission. Hill Aff. Ex. A-2. The Planning and Zoning Commission then discussed the letter at meetings on February 19, 2025 and March 17, 2025. Hill Aff. Exs. B-2 & C-2. The City ultimately made the legislative decision not to amend its zoning code. Hill Aff. Ex. C-2.[5]

The City subsequently made the legislative decision to clarify its home occupation ordinances. On April 1, 2025, the City introduced an ordinance limiting the types of businesses that qualify as home occupations, which the Council enacted after a second reading on May 6, 2025.[6] Hill Aff. Ex. D-1 & D-3 The ordinance amended City Code § 150.02, Definitions. Hill Aff. Ex. D-1. In doing so, it clarified that no home occupation could include the manufacture, assembly, growing, packing, wholesale, or retail sale of any "firework, firearm, gun powder, explosive, cannabis product, cannabis concentrate, cannabis flower, or any other cannabinoid product as defined in Minnesota Statutes Chapter 342." *Id.* These changes apply to all proposed home occupations.

---

[5]    Plaintiff's January 13, 2025 letter also requested a "home-based cannabis microbusiness license." Doc. 1-2 at 21. As cannabis business licensing is exclusively handled by the State through the OCM, the City did not consider Plaintiff's request for a microbusiness license.

[6]    Plaintiff first received preliminary approval of his license between the first and second readings of the ordinance, on April 24, 2025. *See* Doc. 1-3, at 7. Plaintiff did not submit a proposed business location for zoning verification to the City of Waterville before the May 6 enactment; or indeed, at any point since receiving his pre-approval.

## PLAINTIFF'S DATA PRACTICES ACT REQUESTS

The Minnesota Government Data Practices Act (MGDPA), Minn. Stat. § 13.01 et seq., classifies all data created, received, maintained or disseminated by Minnesota government entities as public, nonpublic or private, or protected nonpublic or confidential.[7] The MGDPA allow persons to make requests for data from government entities, including cities. Minn. Stat. § 13.03, subds. 2–3. Not all government data may be disclosed pursuant to a request; data that remains confidential includes data protected by the work product or attorney-client privileges. Minn. Stat. § 13.393.

After the City declined Plaintiff's suggestion to amend its zoning code, Plaintiff submitted a data request to the City pursuant to the MGDPA. Compl. ¶ 48. The City provided the data it believed was both responsive to the request and could be disclosed to Plaintiff. *Id*. ¶ 49.

Plaintiff is now suing the City, alleging that the City's actions violated Minnesota State laws and, thereby, his federal civil rights.

## STANDARD OF REVIEW

The City seeks dismissal of Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) & 12(b)(6). The amended complaint must make sufficient factual allegations to support a reasonable inference that the plaintiff has standing. *Missouri v. Biden*, 52 F.4th 362, 368 (8th Cir. 2022). The court accepts all facts alleged in the

---

[7]   "Nonpublic" data and "private" data are treated similarly, with nonpublic data being data not relating to specific individuals and private data being data with respect to individuals. Minn. Stat. § 13.03, subd. 1. Likewise, "protected nonpublic" and "confidential" data are treated similarly, with protected nonpublic applying to data not on individuals and confidential applying to data respecting individuals. *Id*.

complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). All reasonable factual inferences are drawn in the plaintiff's favor. *Elnashar v. United States DOJ*, 446 F.3d 792, 794 (8th Cir. 2006). But "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court "need not accept conclusory allegations." *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 994 (8th Cir. 2016). Neither are courts bound to accept "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). The complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation omitted). Rather, the complaint must include sufficient factual allegations to state a right to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

Plaintiff's lawsuit is riddled with problems from top to bottom. Plaintiff lacks standing as any inability to operate a home cannabis business is attributable to the State of Minnesota, not the City of Waterville. The cannabis business preliminary approval was held by an LLC; any claim relating to the business must be brought by the LLC rather than Plaintiff personally. An LLC cannot appear pro se. Plaintiff has still identified no violation of federal rights, and simply asserts that an alleged violation of state law entitles him to federal relief. Finally, Plaintiff has still provided only an insufficient "formulaic recitation of the elements" of his claims. Accordingly, the City respectfully requests that the Court dismiss his lawsuit in full.

I.      **Plaintiff's Complaint Must Be Dismissed as Plaintiff Lacks Standing**

A.      *Plaintiff Fails to Allege a Redressable Injury Fairly Traceable to the City*

Standing is an "irreducible constitutional minimum" for any lawsuit. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To have standing, a plaintiff must show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quotations and citations omitted). "For causation to exist, the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Agred Found. v. U.S. Army Corps of Engr's*, 3 F.4th 1069, 1073 (8th Cir. 2021) (quotation omitted). For an injury to be redressable, it must be "likely, as opposed to merely speculative," that the injury will be redressed by a favorable decision. *City of Kennett v. EPA*, 887 F.3d 424, 432 (8th Cir. 2018) (quotation omitted).

To the extent that Plaintiff alleges he suffered a cognizable injury, his alleged injury was his inability to operate a commercial cannabis cultivation business from his dwelling. Such injury is not fairly traceable to the City because, above and beyond the City's zoning ordinances, Plaintiff's desired business was forbidden under OCM regulations. *See* Minn. R. 9810.1100, subp. 4 (forbidding at-home cannabis businesses) & Minn. R. 9810.2000, subp. 8(A) (forbidding at-home commercial cannabis cultivation). The City has no power to waive or alter these regulations. *Jennissen v. City of Bloomington*, 913 N.W.2d 456, 459 (Minn. 2018) ("Cities have no power to regulate in a manner that conflicts with state law or invades subjects that have been preempted by state law.").

Plaintiff appears to argue that a garage is not covered under OCM's regulations forbidding cultivation in a "dwelling." But OCM's definition of "dwelling" includes all types of "residential structure." City Code § 150.02 defines garages as "accessory structures," which are necessarily "related to" the residential purpose of the property. Courts considering similar questions have reached the same conclusion. *See, e.g.*, *Laroque v. Spire Credit Union*, No. 23-2348 (DWF/DTS), 2025 U.S. Dist. LEXIS 52143, at *7 (D. Minn. Mar. 21, 2025) ("Typically, a residential garage is considered part of a [party's] residence."). Plaintiff's proposed business runs afoul of OCM regulations, and Plaintiff's injury cannot have come from any alleged refusal to permit a licensed business when he could not have obtained the necessary license in the first place.

Plaintiff believes that because the City, not the state, controls zoning ordinances, his injury *must* be attributable to the City. In doing so, he simply ignores the application of, and procedure for, the state laws and regulations governing cannabis businesses. Plaintiff includes communications from OCM related to his preliminary license approval, in which OCM confirms that zoning requirements are handled by the City. Compl. ¶ 45. However, this is not an approval of Plaintiff's home-based business by OCM. While OCM does not enact zoning regulations, it does have regulations relating to the location and premises of cannabis businesses. One of those requirements is the prohibition on home-based cannabis businesses. Minn. R. 9810.1100, subp. 4; .2000, subp. 8(A). Compliance with these requirements is simply reviewed at a later stage in the licensing process. Minn. Stat. § 342.14, subd. 6. Had Plaintiff submitted his proposed home-based business for final

licensing approval, OCM would have denied his application and he would not have been able to operate. Plaintiff's alleged injury, therefore, is not traceable to the City.

Plaintiff further focuses on his request for relief, specifying that he is seeking only monetary damages, not an injunction allowing him to operate the business. But to recover damages for lost business operations, a Plaintiff must still show that the damages are a direct result of the challenged conduct. *Cashman v. Allied Prods. Corp.*, 761 F.2d 1250, 1252 (8th Cir. 1985). In other words, Plaintiff must show that but for the City's actions, he would not have suffered the damages in the first place. *Cincinnati Ins. Co. v. Rymer Co., LLC*, 41 F.4th 1026, 1029 (8th Cir. 2022) ("But-for causation only requires a showing that in the absence of the former event, the latter would not have occurred."). In order to have a redressable injury traceable to the City, then, Plaintiff must show that if the City had approved his business, he would have been able to operate it. That is not the case when, as here, State regulations independently forbid the business Plaintiff sought to open.

Plaintiff does not have an injury fairly traceable to the City. Accordingly, Plaintiff lacks standing to pursue his claims and his complaint must be dismissed. *Accord Pickle v. Minn. Ass'n of Twps.*, No. 24-53 (JWB/LIB), 2024 U.S. Dist. LEXIS 232340, at *9 (D. Minn. Nov. 5, 2024) (finding a plaintiff lacked standing to pursue claims that a quasi-governmental body acted unconstitutionally because the plaintiff was independently not entitled to the relief sought).

B.    *Plaintiff Lacks Standing to Pursue Claims on Behalf of the LLC.*

Plaintiff brings his lawsuit in his own name, and appears pro se, arguing that the City's denied his business a "right" to operate. However, the allegedly "wronged" party

here is the LLC, not Plaintiff personally. Plaintiff does not hold, and at no point ever held, a cannabis microbusiness preliminary approval. Compl. ¶ 12. An LLC is a separate legal entity formed under state law. Minn. Stat. § 322C.0102, subd. 12; *see also Sears v. U.S. Trs. (In re AFY)*, 734 F.3d 810, 820 (8th Cir. 2013) (holding that even a sole shareholder cannot pursue litigation on an incorporated entity's behalf).

Whether an individual may pursue a claim involving an LLC individually depends on whether the claim is "direct" or "derivative." Under Minnesota law, a "direct" action is an action by a member against the LLC itself, or against another member, manager, or governor of the LLC, to remedy an injury caused by the LLC or other defendant to the member bringing the action. Minn. Stat. § 322C.0901, subd. 1. A direct action must allege an injury that is different from an injury suffered by the LLC itself. *Id*., subd. 2.

A derivative action, by contrast, occurs when a member attempts to bring a lawsuit on behalf of the entity for injuries to the entity as a whole. *Poultry Borderless Co., LLC v. Froemming*, No. 20-cv-1054 (WMW/LIB), 2021 U.S. Dist. LEXIS 19606, at *12 (D. Minn. Feb. 2, 2021). The determining factor is the injury, not the theory of the claim or cause of action pursued. *Id*; *In re Medtronic, Inc. S'holder Litig*., 900 N.W.2d 401, 408 (Minn. 2017). Members in Minnesota LLCs may pursue a derivative action only after first making a demand that the LLC pursue the action directly, and where the LLC "does not bring the action within a reasonable time." Minn. Stat. § 322C.0902(1). Derivative actions are also subject to heightened pleading requirements, including that the plaintiff must allege they were a member at the time of the injury and that the action is not collusive to confer jurisdiction where it would not ordinarily occur. Fed. R. Civ. P. 23.1(a). The

complaint must also state "with particularity" the efforts undertaken by the plaintiff to have the LLC bring the action itself. *Id.*

Plaintiff's claim is derivative. He does not assert any injury beyond what he alleges the LLC suffered. Plaintiff asserts he suffered lost income, but income from business operation would first have gone to the LLC. He may therefore maintain his lawsuit only after following the requirements to bring a derivative action.

Plaintiff's complaint does not follow the procedural requirements imposed on derivative actions. Plaintiff has failed to include the necessary allegations that he first demanded the LLC bring a lawsuit in its own name, and was rebuffed. Nor has he stated at all, much less with particularity, the efforts he undertook to have the LLC bring a lawsuit in its own name. Rather, he simply asserts that because he is the sole member of the LLC, he is exempt from the rules governing LLCs and may proceed individually. Plaintiff points to no authority establishing this exemption (because, of course, there is none). Accordingly, Plaintiff's compliant must be dismissed.

Further, even where a member of an LLC can bring a derivative action the LLC itself remains an indispensable party to all claims brought on its behalf. *Buckley v. Control Data Corp.*, 923 F.2d 96, 98 (8th Cir. 1991). Even had Plaintiff fulfilled the other procedural requirements to file a derivative action, he failed to join the LLC. The lawsuit must therefore also be dismissed for failure to join an indispensable party. Fed. R. Civ. P. 12(b)(7); *Poultry Borderless Co., LLC*, 2021 U.S. Dist. LEXIS 19606, at *12.[8]

---

[8]    The City again notes that the LLC could not appear pro se; business entities may appear only through counsel. *Rowland v. California Men's Colony, Unit II Men's Advisory*

**II.    Plaintiff's Complaint Must Be Dismissed as He Failed to State a Claim**

Beyond lacking standing to pursue his claims, Plaintiff has also failed to identify any valid claim he could pursue if he did have standing. Plaintiff brings federal § 1983 civil rights claims. But his underlying allegations are that the City failed to follow Minnesota State law and its own ordinances, without identifying any federal right implicated. Further, Plaintiff has failed to make *factual* allegations supporting the necessary elements of his claims. Accordingly, Plaintiff's complaint must be dismissed.

*A.    Plaintiff Fails to Identify Any Federal Rights Underlying His Claims*

Plaintiff's lawsuit is based on his claims under 42 U.S.C. § 1983, alleging violation of his federal constitutional rights. However, the actual violations alleged stem entirely from State law. A plaintiff "cannot seek relief in federal court under section 1983 based on alleged violations of Minnesota laws." *Nicolaison v. Milczark*, 26 F. App'x 596, 597 (8th Cir. 2002); *White v. City of Minneapolis*, No. 21-cv-0371 (WMW/KMM), 2021 U.S. Dist. LEXIS 240414, at *19 (D. Minn. Dec. 16, 2021) ("No cause of action exists under Section 1983 for a violation of a state constitutional right."). Simply naming the federal constitution is insufficient to create a federal interest. Plaintiff alleges that the City failed to follow its own zoning ordinances, improperly amended its own zoning ordinances, and failed to respect his Minnesota regulatory approval from OCM. Compl. ¶¶ 4–5, 12. In response, Plaintiff brings federal § 1983 claims for violation of due process, equal protection, and first amendment retaliation. But Plaintiff fails to connect these claims to any federal right.

---

*Council*, 506 U.S. 194, 202 (1993); *United States v. Van Stelton*, 988 F.2d 70, 70 (8th Cir. 1993).

Rather, Plaintiff asserts that the alleged violations of state and local laws and ordinances per se create federal violations. This is simply untrue, and Plaintiff's failure to identify actionable violations of federal rights is independent grounds for dismissal of his § 1983 claims.

## B.    Plaintiff has Failed to Plead All Necessary Elements

Plaintiff brings four counts in his complaint. Yet these claims are based on sparse pleadings containing at most a bare "formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. Because Plaintiff failed to plead the necessary facts to support his claims, his complaint must be dismissed.

### 1.    Due Process

Plaintiff alleges that the City deprived him of a protected property interest without due process of law. Compl. ¶ 55. Due process only applies to protect vested liberty or property interests. *Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997). "Protected property interests are created by state law, but federal law determines whether the interest rises to the level of a constitutionally-protected property interest." *Ellis v. City of Yankton*, 69 F.3d 915, 917 (8th Cir. 1995). Under Minnesota law, there is no protected property interest in a prospective business. *Deep Dish, Inc. v. City of Minneapolis*, No. A04-728, 2005 Minn. App. LEXIS 236, at *10 (Ct. App. Mar. 8, 2005); *Arens v. Rogers*, 61 N.W.2d 508, 519 (Minn. 1953); *Country Liquors, Inc. v. City Council of Minneapolis*, 264 N.W.2d 821, 826 (Minn. 1978). Plaintiff cannot identify a vested property interest supporting a claim for a violation of his due process rights; his claim centers only his subjective desire to enter the cannabis business.

Further, before a plaintiff may bring a federal lawsuit alleging a violation of due process rights, they must exhaust all state processes made available to them. *Raymond v. Bd. of Regents of the Univ. of Minn.*, 847 F.3d 585, 589 (8th Cir. 2017) Here, Plaintiff alleges that he was improperly denied a CUP. However, Plaintiff did not ever, in fact, *apply* for a CUP. Plaintiff cites to his January 13, 2025 letter suggesting a zoning amendment. Compl. ¶ 28. But he never submitted an actual CUP application on the required and publicly available form, or attempted to pay the CUP application fee. Plaintiff cannot show that he exhausted his available state law process.

Plaintiff argues that such a CUP application would have been futile because the City had already declined to make cannabis cultivation a permitted use. Compl. ¶ 37. The fact that the City did not approve his business as a *permitted* use does not automatically mean it would not approve it as a *conditional* use. But more importantly, for an exception to the exhaustion requirement to apply Plaintiff must show more than a likelihood that the City would have denied his CUP application. Rather, he must show that the City lacked the *ability* to grant him the relief requested, such as because of a lack of institutional competence to resolve the question or a lack of authority to grant CUPs. *Raymond v. Bd. of Regents of the Univ. of Minn.*, 847 F.3d 585, 592 (8th Cir. 2017); *see also Bartlett v. U.S. Dept. of Agriculture*, 716 F.3d 464, 473 (8th Cir. 2013). The City, of course, has both the competency and ability to process CUP applications. Plaintiff's mere belief that the City would not have considered a CUP application fairly does not establish that the City lacked the ability to do so. *Midgett v. Washington Group Intern. Long Term Disability Plan*, 561 F.3d 887, 898 (8th Cir. 2009) ("Unsupported and speculative claims of futility

do not excuse a claimant's failure to exhaust his or her administrative remedies." (internal quotes omitted)).

Finally, Plaintiff alleges that his "right" to operate a business from his home was taken without due process. But due process does not require infinite process. Rather, "the essential requirements of due process…are notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985). Regardless of whether it was required, as shown in his complaint Plaintiff was afforded both. He submitted his suggestion to have the City amend its zoning ordinances, and the City duly considered that suggestion. Plaintiff was notified of, and spoke at, multiple public meetings before the City or its Planning and Zoning Commission. *See, e.g.*, Hill Aff. Exs. A-2 & C-2; *see also Northland Baptist Church of St. Paul v. Walz*, 37 F.4th 1365, 1370 (8th Cir. 2022) (the court may consider documents in the public record in deciding a motion to dismiss). When the City discussed amending its home occupation definition on May 6, 2025, a councilmember first read aloud in full a letter Plaintiff submitted. Hill Aff. Ex. D-3. Plaintiff was afforded notice and an opportunity to be heard. That he simply disagrees with the City's decision is not a valid basis for a lawsuit. *Upper Midwest Booksellers Ass'n v. Minneapolis*, 780 F.2d 1389, 1399 (8th Cir. 1985) ("[I]t is not the business of the courts to second-guess the wisdom or efficacy of validly enacted legislation.").

Plaintiff fails to identify a vested property right supporting a due process claim, failed to exhaust his available state remedies, and was in fact afforded public process. The City respectfully requests that his Count I be dismissed.

*2.    Equal Protection*

Plaintiff alleges that the City violated his right to equal protection under law pursuant to the Fourteenth Amendment. Compl. ¶ 22. A claim for a violation of equal protection requires showing that the plaintiff was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Flowers v. City of Minneapolis*, 558 F.3d 794, 798 (8th Cir. 2009) ("To establish a violation of the Equal Protection Clause [plaintiff] must show that he was treated differently than other persons who were in all relevant respects similarly situated." (quotation omitted)) Plaintiff bears the burden of proving that he is similarly situated "in all relevant aspects" to the group he compares himself to. *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004). Plaintiff's complaint must contain sufficient factual allegations to support this comparison; he may not rely on "[t]hreadbare recitals of the elements" or "mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff again simply submits the conclusory allegation that he has been treated differently from "other similarly situated persons." Compl. ¶ 63. Plaintiff entirely fails to identify who these "other…persons" are, or how they are similarly situated to him. *See also Flowers*, 558 F.3d at 799 (discretionary decision-making is not subject to class-of-one equal protection claims); *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015) ("A class-of-one plaintiff must therefore provide a specific and detailed account of the nature of the preferred treatment of the favored class, especially when the state actors exercise broad discretion to balance a number of legitimate considerations." (quotations omitted)).

Plaintiff does not, and of course cannot, allege that any other cannabis business, owned by another individual, was treated differently.

At most, Plaintiff's complaint could be read as alleging that the City distinguishes between cannabis home-based businesses and non-cannabis home-based businesses. *See* compl. ¶ 63(a) (referencing "other Level-2 home occupations"). But cannabis and non-cannabis businesses are not similarly situated in "all relevant aspects." Operating a cannabis business is not a fundamental right, nor does it place Plaintiff within a federally protected suspect class. Accordingly, the City's legislative decisions must stand "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Knapp v. Hanson*, 183 F.3d 786, 788 (8th Cir. 1999) (quotation omitted). "[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Commc'ns*, 508 U.S. 307, 313 (1993). A legislative policy "may be based on rational speculation unsupported by evidence or empirical data." *Id*. Because "all that must be shown is any reasonably conceivable state of facts that could provide a rational basis for the classification, it is not necessary to wait for further factual development." *Knapp*, 183 F.3d at 789 (quotation omitted).

An at-home cannabis business is clearly not similarly situated to all non-cannabis at-home businesses. Cannabis businesses are subject to stringent regulations on everything from security to access to waste disposal. *See* Minn. R. Ch. 9810. Cannabis businesses, unlike non-cannabis businesses, must comply with heightened security requirements including bright lights, locks, alarms, and 24-hour interior and exterior video surveillance. Minn. R. 9810.1500. Indeed, by state regulation cannabis businesses must have 24-hour-

per-day video surveillance, at a high enough resolution to identify anyone captured in the video, covering the entire perimeter of the property where the business is located. Minn. R. 9810.1500, subp. 9. And cannabis businesses must have alarms active 24 hours per day and audible from a minimum of 100 feet from all entrances and exits of the building. Minn. R. 9810.1500, subp. 8. There is clearly a rational basis for the City to decide that bright lights, loud alarms, and invasive security cameras are not compatible with residential areas.

Further, these security requirements exist because there is a clear history of cannabis businesses being targeted by violence and crime. *See, e.g.*, Sarah Edgecomb, *GRPD searching for 'armed and dangerous' suspect in dispensary robbery*, ABC13 (Nov. 13, 2025), https://www.wzzm13.com/article/news/local/grand-rapids-dispensary-armed-robbery-suspect-photos/69-fc6f8aa7-de0e-4f4a-8e93-a6c5aa9461ef; Zaeem Shaikh, *Oregon regulators warn Portland area cannabis businesses of increase in burglaries, armed robberies*, THE OREGONIAN (Mar. 25, 2025), https://www.oregonlive.com/crime/2025/03/oregon-regulators-warn-portland-area-cannabis-businesses-of-increase-in-burglaries-armed-robberies.html. Again, there is a clear rational basis for the City to decide that businesses subject to such concerns are not compatible with residential areas. These regulations, and the concerns behind the regulations, do not apply to non-cannabis businesses, meaning non-cannabis businesses are not similarly situated in all relevant aspects. Nothing further is required, and Count II of Plaintiff's Complaint must be dismissed as failing to allege that a genuinely similarly situated party was treated differently from Plaintiff.

3.    *First Amendment Retaliation*

Plaintiff includes a count alleging First Amendment Retaliation. Compl. ¶ 70. To plead a claim for First Amendment Retaliation, a complaint must show that (1) the plaintiff engaged in protected first amendment activity, (2) the defendant took adverse action that would chill the speech of a "person of ordinary firmness," and (3) that this adverse action was motivated by the exercise of the Plaintiff's constitutional rights. *Eggenberger v. W. Albany Twp.*, 820 F.3d 938, 943 (8th Cir. 2016). Even assuming Plaintiff's suggestion that the City change its zoning ordinance is protected by the First Amendment, Plaintiff has flatly failed to plead any facts that could support the second or third elements.

Plaintiff must plead that the City took adverse action against him that would cause a "person of ordinary firmness" to cease any further protected speech. *Id*. Plaintiff alleges the City took three actions: it disagreed with his suggestion to change its zoning ordinances, the City changed its zoning ordinances to explicitly forbid all cannabis home occupations, and the City did not change course when Plaintiff continued to advocate for at-home cannabis businesses. Compl. ¶ 70. None of these is sufficient to support a claim for first amendment retaliation as a matter of law.

To support a claim for first amendment retaliation, the alleged conduct must be "sufficiently egregious" that an ordinary person would be deterred from continuing to speak out. *Eggenberger*, 820 F.3 at 943. Even merely "offensive, unprofessional and inappropriate" comments are, as a matter of law, insufficient to constitute first amendment retaliation. *Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002). Rather, the

alleged conduct must have sufficient impact to constitute a "material change" to the plaintiff's situation. *Bechtel v. City of Belton*, 250 F.3d 1157, 1162 (8th Cir. 2001).

Plaintiff's allegations do not even approach that level. Plaintiff alleges no statements or actions disparaging him personally. Rather, Plaintiff alleges that he suggested a policy change, and then that the City did not find the suggestion worth acting on. But Plaintiff was able to present his proposed policy amendments. This flatly fails to show conduct that would silence a "person of ordinary firmness." *Eggenberger*, 820 F.3 at 943. Nothing in Plaintiff's complaint shows that the City engaged the "punitive machinery of government" targeting Plaintiff. *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003). Notably, Plaintiff fails to make any allegation that he has, in fact, been deterred from making any further statement at all. Instead, he directly alleges that he continued to advocate for his business *after* the alleged retaliation. Compl. ¶ 70(c).

Plaintiff also fails to allege a connection between the allegedly adverse action and his own speech. Plaintiff has made no allegation that any other cannabis businesses have been treated differently, or that any public official has displayed animus toward him personally. Plaintiff points to statements by the City Attorney comparing cannabis to explosives or firearms. This is, of course, a non-actionable statement of opinion and not an adverse action against Plaintiff. But even if considered, the statement shows no connection to any activity undertaken by Plaintiff. At most it shows that the City Attorney had a negative opinion of *cannabis*, not any opinion toward Plaintiff's speech.

Plaintiff also points to an email from the City Attorney. *See* doc. 1-3, at 3. In that email, the City Attorney discussed a potential amendment to the city code, which he said

was important because he would "kind of like to possible [sic] get ahead of dangerous occupations especially with the State getting closer to issuing THC licenses." *Id.* He further mentioned a "person of interest in town that may try to do something clever." *Id.* Plaintiff alleges that he was the "person of interest." Compl. ¶ 39. Plaintiff argues that this shows the City was acting to target him because of his speech. Even assuming that Plaintiff is indeed the "person of interest," this email does not show first amendment retaliation. Merely being aware of a potential application of an ordinance does not establish that the city implemented it to retaliate against Plaintiff. *Cf. Pawn Am. Minn., LLC v. City of St. Louis Park*, 787 N.W.2d 565, 573 (Minn. 2010) ("But awareness of one particular application [of an ordinance] does not, in itself, make the City's actions arbitrary or unreasonable.").

By comparison in *Garcia*, the plaintiff complained about lack of enforcement of a biking ordinance, and then the mayor of the city told her that an unrelated parking ordinance "would be enforced against her, and that [the mayor] was taking this action because of her complaints." 348 F.3d at 728. This enforcement singled out the plaintiff because, despite the fact that her neighbors also frequently violated the parking ordinance, only the plaintiff received a ticket for it, and only after the message from the mayor targeting her. *Id*. This singular use of an unrelated ordinance showed that the city was not taking action against the plaintiff just because it had become aware of some problem. Rather, the city was attempting to prevent the plaintiff from speaking about an unrelated ongoing issue. Plaintiff here cannot show a similar situation. There is no indication that the City took any action to target Plaintiff in any way different from any other person. Nor is

there any indication that the City took action based on Plaintiff's *speech* in any way. "[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Sorrell v. IMS Health Inc*., 564 U.S. 552, 567, (2011). To state a claim for first amendment retaliation, Plaintiff must show that the City acted not only while aware of his proposed business, but specifically in retaliation against something he *said*. Plaintiff alleges nothing showing that he was targeted because of speaking up. At most he shows that the City was aware of how its actions might affect his specific circumstances. This does not satisfy a necessary element of his first amendment retaliation claim, and his Count III must be dismissed.

4.    *Minnesota Government Data Practices Act*[9]

Plaintiff alleges that the City "mishandled" his requests for data under the MGDPA. To support his claim, Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation omitted). But such a "formulaic recitation" is all Plaintiff has provided. Plaintiff asserts that the City "improperly withheld non-privileged public data." Compl. ¶ 49. Later in the complaint he alleges that the City violated the MGDPA by "withholding non-privileged data." Compl. ¶ 76. There are mere conclusory statements, and not binding on the court. *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 994 (8th Cir. 2016). The complaint does not provide any factual basis for the claim for relief. Plaintiff does not even

---

[9]    Plaintiff's Count IV is a Minnesota state law claim. Because his federal law claims must be dismissed, his state law claim could be dismissed because Plaintiff has alleged no other basis for federal jurisdiction. 28 U.S.C. § 1367(c)(3). But Count IV is also defective on its merits, and must be dismissed accordingly.

include what data he requested from the City. Nor does he provide a factual basis for how the City responded, what information Plaintiff received, whether the City withheld any information, the justification for any withholding, what facts might support a belief that any justification was incorrect, or any other matter required to establish that Plaintiff's claim is "plausible on its face." *Iqbal*, 556 U.S. at 678. Accordingly, Plaintiff's Count IV does not meet the pleading standard and must be dismissed.

## CONCLUSION

The City of Waterville has legislatively enacted a zoning code regulating home occupations within residential areas. Plaintiff Travis Perry would prefer the City adopt different land use ordinances. But while he is entitled to his opinion of the best policy, Plaintiff has flatly failed to identify any conduct by the City that violates his federal civil rights. Instead, he has engaged in a mechanical recitation of an incomplete list of the elements of various civil rights claims. Further, Plaintiff lacks standing to advance his claims at all because his alleged injury—his inability to commercially cultivate cannabis from his garage in a residential area—ultimately stems from state regulation over which the City has no control. To the extent his injury does exist, it is held by his LLC, which must pursue the claim, not by Plaintiff personally. Accordingly, the City respectfully requests that the Court dismiss Plaintiff's claims with prejudice.

**CAMPBELL KNUTSON**
*Professional Association*

Dated:  December 17, 2025            By _____*/s/ John S. Brooksbank*_____
                                            John S. Brooksbank (#0402593)
                                            Jared D. Shepherd (#0389521)
                                            Grand Oak Office Center I
                                            860 Blue Gentian Road, Suite 290
                                            Eagan, MN 55121
                                            Telephone: (651) 234-6235
                                            jbrooksbank@ck-law.com
                                            jshepherd@ck-law.com

                                            *Attorneys for Defendant City of Waterville*

# UNITED STATES DISTRICT COURT
## IN THE
### DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Travis Perry, | ) | **Civil Action No.: 0:25-cv-3352-LMP-LIB** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CERTIFICATE OF COMPLIANCE** |
| | ) | |
| City of Waterville, official capacity; Jason Moran, in his official and individual capacities; Teresa Hill, in her official and individual capacities; and Waterville Zoning Commission, official capacity. | ) ) ) ) ) | |
| | | |
| Defendants. | | |

I hereby certify that Defendants' Memorandum in Support of its Motion to Dismiss complies with Local Rules 7.1(f) & (h). I certify that in preparing this Memorandum I used the Microsoft Word program, Standard 2016 version, and Times New Roman 13 pt. font. According to the word-count function of the Microsoft Word program, the length of the Memorandum is 7,245 words, which includes all text, headings, footnotes, and quotations.

Dated:  December 22, 2025

Respectfully Submitted,
**CAMPBELL KNUTSON**
***Professional Association***

By _____/s/ John S. Brooksbank_____
     John S. Brooksbank (#0402593)
     Jared D. Shepherd (#0389521)
     Grand Oak Office Center I
     860 Blue Gentian Road, Suite 290
     Eagan, MN 55121
     Telephone: (651) 234-6235
     jbrooksbank@ck-law.com
     jshepherd@ck-law.com
     *Attorneys for Defendant City of Waterville*