UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Travis P. Perry,
Plaintiff,

v. Case No. 0:25-cv-03352-LMP-LIB

City of Waterville, Minnesota;
Waterville Planning and Zoning Commission;
Jason Moran, in his individual and official capacities;
Teresa Hill, in her individual and official capacities;

Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**

**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

**I. INTRODUCTION**

Defendants' second motion to dismiss tries to recast a straightforward civil-rights case into a routine zoning dispute and to erase what actually happened at the March 17, 2025 Planning and Zoning Commission meeting.

At the time Plaintiff approached the City in January 2025, Waterville's zoning code allowed Level-2 home occupations in the R-2 district by conditional use permit (CUP) and contained **no categorical prohibition** on cannabis "growing" as a home occupation. City Attorney Moran admitted on the record (see Ex 69) that the City could legally treat Plaintiff's cultivation-only home occupation in his attached garage as a conditional use, but told the Commission that, "legally, can we [allow it]? Yes. Should we? No," while comparing Plaintiff's plan to "gunpowder" and "dynamite" in a residential neighborhood. The Commission then voted **"to deny the request of changing the zoning to allow it as a permitted use and not to allow it as a use as a conditional use permit."**

That vote simultaneously (1) denied Plaintiff's pending request and (2) closed off any CUP path under the existing Level-2 framework. Shortly afterwards, the City drafted and adopted a targeted amendment excluding "growing" cannabis and a short list of disfavored items (fireworks, firearms, explosives) from the definition of "home occupation,"

specifically to (see Ex 41) "get ahead of dangerous occupations … with a person of interest in town that may try to do something clever."

Plaintiff's amended complaint alleges:

- a **procedural due-process claim** based on the City's decision to foreclose the CUP process and then retroactively change the ordinance while his request was pending;
- an **equal-protection "class-of-one" claim** based on the City's decision to treat his cultivation-only home occupation differently from other Level-2 home occupations that are allowed to proceed by CUP;
- a **First Amendment retaliation claim** based on Defendants' targeting of his request and subsequent ordinance amendment in response to his speech, petitioning, and data-practices requests;
- and a **Minnesota Government Data Practices Act (MGDPA)** claim based on the City's mishandling of his data requests.

Defendants' new motion raises four main theories: (1) Plaintiff lacks Article III standing because his injuries are supposedly speculative and belong to an LLC; (2) he has no cognizable federal right in the CUP process; (3) his claims are barred by state cannabis-licensing law, including later-enacted restrictions on cannabis businesses in dwellings; and (4) even if the federal claims survive, the Court should dismiss or decline supplemental jurisdiction over the MGDPA count.

At the Rule 12(b)(1) / (6) stage, these arguments fail for several reasons:

1. The amended complaint pleads concrete, non-speculative **personal injuries**—loss of the Year-1 cultivation business that would have operated from Plaintiff's own residential property, loss of the time-limited social-equity advantage that exists only because of Plaintiff's veteran status, and emotional and dignitary harms from being arbitrarily excluded from a process available to others.

2. The home-occupation and CUP provisions in place in early 2025, combined with the City's own on-record admission that it could legally approve Plaintiff's use by CUP, support a **legitimate claim of entitlement to a fair, non-arbitrary CUP process**, not a discretionary favor.

3. The **futility doctrine** applies. Once the Commission formally voted not to allow Plaintiff's use (See Ex 69) "as a conditional use permit," it would have been pointless to submit a formal CUP application on the City's form and pay a fee for a use the City had already refused to consider.

4. Later-enacted state restrictions on cannabis businesses in dwellings cannot retroactively cure the City's earlier due-process and equal-protection violations. The violation was complete when the City foreclosed the CUP path and targeted Plaintiff with the ordinance amendment, before the later state law took effect.

5. The Office of Cannabis Management (OCM) expressly confirms( See Ex A) it **does not mandate local zoning requirements**; it merely checks that an applicant complies with whatever zoning the city chooses to adopt. State licensing is therefore not an independent bar that breaks causation; it depends on the City's zoning decision that is being challenged here.

6. The amended complaint alleges municipal policy-making and personal involvement sufficient to state **Monell** liability against the City and personal liability against Moran and Hill.

Accepting the well-pleaded facts as true and drawing all reasonable inferences in Plaintiff's favor, the amended complaint more than plausibly states claims under 42 U.S.C. § 1983 and Minnesota law. Defendants' renewed motion should be denied in full.

## II. RELEVANT FACTS (AS PLED)

Plaintiff incorporates the detailed factual allegations in his Amended Complaint, but the most important points for this motion are summarized here.

### A. Plaintiff's status and phased business plan

Plaintiff is a Minnesota resident, ( See Ex B and A) U.S. Army veteran, and social-equity applicant under Minnesota cannabis law. In early 2025, he developed a **phased business plan**:

- **Year 1** – A cultivation-only microbusiness from the attached garage at his R-2-zoned residence at 529 Mallory Street North, with operations entirely indoors, no retail sales at the home, minimal traffic, odor control, and security measures; and

- **Years 2 and beyond** – Relocation of operations to a fully compliant commercial site in an industrial district, financed largely by Year-1 net income and tax returns.

Plaintiff prepared conservative, detailed damage calculations that quantify his Year-1 net income and multi-year expansion losses based on realistic yields, market pricing, and operating costs. These calculations explicitly exclude more speculative revenue streams and demonstrate that his projections are grounded in real numbers, not wishful thinking.

Plaintiff formed a single-member LLC primarily as a liability and business-organization vehicle. Without Plaintiff's personal veteran social-equity status, the business would not have been eligible for the social-equity pre-approval it ultimately received. Thus, the economic opportunity at issue is personal to Plaintiff.

### B. Zoning ordinances and Level-2 home occupations

Plaintiff's property is zoned R-2 Medium Density Residential and lies in the Flood Fringe overlay district. At all relevant times through at least March 17, 2025, the City's zoning code:

- allowed home occupations in R-2;
- distinguished between Level-1 home occupations (permitted by right) and Level-2 home occupations (allowed in R-2 by CUP); and
- did **not** contain any categorical prohibition on cannabis "growing" or cultivation as a home occupation. ( See Ex 0001 - 0017 )

The Level-1 and Level-2 standards focus on neutral impact-based criteria such as floor area, number of employees, traffic generation, utility usage, noise, odor, and hazardous waste, and they expressly allow home occupations in accessory buildings consistent with these standards.

Nothing in the then-existing code barred a cultivation-only use in an attached garage that satisfied these neutral criteria.

### C. Plaintiff's request and the P&Z decision

On January 13, 2025, Plaintiff submitted a detailed letter ( See Ex 20 and 21) to the City Council describing his proposed cultivation-only microbusiness and requesting both (a) consideration of a home-based cannabis microbusiness license and (b) an amendment to clarify that such a use would be allowed as a permitted use in residential zones. He explained that cultivation would occur indoors in his garage with organic practices, no chemicals, and minimal neighborhood impact.

On February 4, 2025, Plaintiff submitted a further letter and appeared at a City Council meeting; the agenda listed "Home-Based Cannabis Micro Business Amendment Request – Travis Perry." Plaintiff made clear that he sought a lawful CUP-based path, not retail sales from his residence. The Council referred the matter to the Planning and Zoning Commission (P&Z).

At the March 17, 2025 P&Z meeting, City Attorney Moran presented Plaintiff's proposal. He acknowledged that the City's code already allowed cannabis manufacturing and retail

sales as conditional uses in industrial districts and that the City could legally treat Plaintiff's cultivation-only home occupation as a conditional use. Moran nevertheless warned the Commission about "worst-case scenarios" and repeatedly compared Plaintiff's proposed use to manufacturing gunpowder, fireworks, or dynamite in a residential neighborhood. (See Ex 69)

Ultimately, the P&Z Commission voted:

"to deny the request of changing the zoning and not to allow it as a use as a conditional use permit."

That vote did two things at once: it denied Plaintiff's pending request and **foreclosed the CUP path** under the existing code. After that decision, submitting a formal CUP application on the City's form and paying a fee would have been futile.

### D. Retaliatory ordinance amendment and state licensing

Within weeks of the P&Z decision, Moran emailed Hill suggesting that they amend the home-occupation definition to exclude "dangerous occupations," specifically referencing cannabis and describing Plaintiff as a (See Ex 0041) "person of interest … that may try to do something clever." The resulting amendment excluded "manufacturing, assembly of, growing of, packaging for sale of, or retail sale of … cannabis product, cannabis concentrate, cannabis flower, or any other cannabinoid product" from allowed home occupations.

Before ever approaching the City, Plaintiff had already applied to OCM for microbusiness pre-approval as a veteran social-equity applicant, and he informed City officials of that fact. OCM's processing was temporarily paused (See Ex A) due to unrelated litigation, but once the pause lifted, OCM issued pre-approval to Plaintiff (and/or his wholly-owned LLC) confirming eligibility under state law.

OCM's own email to Plaintiff (See Ex A) confirms that OCM **"does not mandate what [local] zoning requirements are"**; it only verifies compliance with whatever zoning rules the local government adopts. In other words, if the City had allowed Plaintiff's cultivation-only use by CUP, OCM would have evaluated the location under that approved zoning—not the other way around.

Defendants now rely on later-enacted statewide restrictions on cannabis businesses in dwellings as if those rules had existed when the City denied Plaintiff on March 17, 2025. But those restrictions were adopted **after** the denial and the targeted ordinance amendment. The constitutional violation was complete when the City foreclosed the CUP path and singled out Plaintiff for exclusion under the then-existing code.

## III. LEGAL STANDARD

On a Rule 12(b)(6) motion, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor. A complaint survives dismissal if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." The Court may consider documents embraced by the pleadings, such as the ordinance text, Plaintiff's letters, the meeting minutes, and the corrected transcript.

On a Rule 12(b)(1) facial standing challenge, the Court applies a similar standard, looking to the allegations of injury, causation, and redressability and assuming their truth at this stage.

## IV. ARGUMENT

### A. Plaintiff has Article III standing and may pursue these claims pro se.

Defendants argue that Plaintiff's injuries are speculative, belong to an unnamed LLC, and are not fairly traceable to the City's actions. The amended complaint and exhibits show otherwise.

1. **Concrete injury-in-fact**

Plaintiff alleges that, as a direct result of the City's denial and subsequent ordinance amendment, he lost the opportunity to operate his Year-1 cultivation-only home occupation from his attached garage and to use that year's net income and tax returns to finance relocation and expansion in Years 2 and 3. He also alleges emotional distress and dignitary harms from being arbitrarily excluded from a process available to others.

Courts routinely recognize lost business opportunities and lost profits as cognizable injuries at the pleading stage, especially where the plaintiff supplies detailed, conservative projections as Plaintiff has done here. Defendants' disagreement with the amount or duration of Plaintiff's damages is a matter for discovery and, if necessary, the jury—not a Rule 12 dismissal.

2. **Personal, not derivative, injuries**

Defendants characterize Plaintiff's injuries as "derivative" of an LLC. That misstates both the pleadings and the record. The rights asserted here are personal to Plaintiff:

- the right to use his own residential property for a lawful Level-2 home occupation under the existing code;

- the right to be free from arbitrary discrimination and retaliation by local officials; and
- the right to benefit from his own veteran social-equity status, without being singled out and blocked by local zoning officials.

The fact that Plaintiff formed a single-member LLC as a vehicle to operate the business does not convert these personal constitutional claims into derivative corporate claims. The City targeted **Plaintiff himself** as a "person of interest" who might "do something clever." The P&Z resolution denying the request and refusing to allow the use "as a conditional use permit" is directed to Plaintiff by name.

Plaintiff is **not** asking the Court to represent an LLC or to adjudicate third-party shareholder claims. He seeks relief for his own constitutional injuries and for lost profits he personally would have earned by operating the business from his home. That is sufficient for standing.

3. **Causation and redressability**

But for the City's decision to foreclose the CUP path and then amend the home-occupation ordinance to exclude cannabis "growing," Plaintiff would have had a viable Year-1 cultivation business and a realistic path to expansion. The City's actions are the sole reason his veteran social-equity pre-approval could not be used at his home site and why his phased plan was delayed by at least three years.

Monetary damages and declaratory relief are fully capable of redressing these injuries. Plaintiff therefore has Article III standing.

**B. The amended complaint plausibly alleges a protected property interest and a procedural due-process violation.**

Defendants argue that Plaintiff had no protected property interest in the CUP process because he never submitted a formal CUP application and because CUPs are discretionary. The pleadings and exhibits support the opposite conclusion.

1. **Legitimate claim of entitlement to a fair CUP process**

A protected property interest exists where "rules or mutually explicit understandings" support a **legitimate claim of entitlement** to a government benefit, as opposed to a mere unilateral expectation. The City's pre-amendment home-occupation and CUP provisions created such an entitlement:

- Level-2 home occupations were expressly allowed in R-2 by CUP, subject to neutral, impact-based criteria;

- The code did not categorically prohibit cannabis cultivation; and
- City Attorney Moran admitted on the record that the City **could legally approve** Plaintiff's use as a conditional use. ( See Ex 69)

These facts, taken together, support at least a plausible "entitlement to a fair, non-arbitrary process and consideration under the existing criteria," as Plaintiff alleges. The Constitution does not require that approval be automatic; it requires that the process not be closed ad hoc to a disfavored applicant.

2. **Final, adverse decision and futility of further applications**

Defendants assert that Plaintiff "never applied" because he did not submit the City's CUP form or pay a fee. That ignores the Commission's own formal action:

"Motion made by Akemann, Seconded by Mack to deny the request of changing the zoning and **not to allow it as a use as a conditional use permit.** All approve 3–0." ( See Ex 69 )

Once the City's final policymakers voted not to allow Plaintiff's use as a conditional use permit at all, any further application would have been **futile**. Plaintiff specifically alleges futility: "After the P&Z vote, any further administrative remedy—such as submitting a formal CUP application—was futile because Defendants had already decided that Plaintiff's use would not be considered as a conditional use and had expressly closed both the permitted-use and conditional-use paths."

Courts routinely hold that a plaintiff need not perform useless acts or pursue hopeless administrative remedies where the governing body has already made a final decision or made clear that an application will be denied. At the pleading stage, Plaintiff's allegations of futility are more than sufficient.

3. **Deprivation without adequate process**

Plaintiff further alleges that Defendants deprived him of this entitlement without adequate process by:

- denying his request and foreclosing the CUP path based on speculative "worst-case" analogies rather than the neutral criteria in the code; and
- then drafting and adopting a targeted ordinance change designed to permanently bar his cultivation-only use as a home occupation.

Plaintiff never received an opportunity to submit a CUP application under neutral standards, to present evidence specific to his attached-garage plan (including separate exterior entrances and no need to pass through livable space), or to have his request

evaluated by an impartial decision-maker. That is sufficient to state a procedural due-process claim.

### C. The amended complaint states a plausible equal-protection "class of one" claim.

Defendants contend that Plaintiff has not identified similarly situated comparators or irrational discrimination. The pleadings and exhibits again prove otherwise.

Plaintiff alleges that:

- The City's zoning code allows a variety of Level-2 home occupations in R-2 that create comparable or greater impacts (traffic, deliveries, utility usage, potential nuisances), so long as those impacts can be addressed with CUP conditions.

- His proposed cultivation-only use, operated entirely in his attached garage with no retail, limited traffic, and odor/security controls, was similarly situated in all relevant respects;

- Defendants intentionally treated him differently by (a) voting to deny his request and refusing to allow his use as a conditional use permit, while leaving other Level-2 home occupations available by CUP; and (b) drafting and adopting a targeted ordinance amendment excluding cannabis "growing" alongside fireworks, firearms, and explosives.

- Internal emails and meeting minutes show that the amendment was motivated by animus toward Plaintiff and cannabis operators in general, not by neutral planning considerations.

These allegations fit squarely within a "class-of-one" equal-protection theory: a single individual intentionally treated differently from others similarly situated, with no rational basis for the distinction. The City's reliance on speculative "dynamite" scenarios and labeling Plaintiff a "person of interest" is plausibly pretext for hostility, not a rational planning judgment.

At the Rule 12 stage, Plaintiff need not identify by name every other home-occupation permittee in Waterville; it is enough that he alleges the City allows other Level-2 home occupations with comparable impacts while categorically excluding cannabis cultivation based on hostility and misinformation.

### D. The First Amendment retaliation claim is adequately pled.

Plaintiff alleges that he engaged in protected activity by:

- submitting written requests to the City about his proposed microbusiness and zoning;
- speaking at public meetings;
- submitting MGDPA data-practices requests; and
- providing notice of his intent to pursue legal remedies.

In response, Defendants took adverse actions that would chill a person of ordinary firmness, including:

- denying his request and refusing to allow his use by CUP;
- drafting and adopting a targeted ordinance amendment (See Ex 0042) aimed at ensuring he could never operate his cultivation-only microbusiness in Waterville; and
- refusing to correct their actions even after being notified of the harms.

The chronology supports a plausible inference of retaliatory motive. Moran's March 27, 2025 email, sent after Plaintiff persisted in seeking a lawful path and inquiring about state licensing, expressly links the home-occupation amendment to Plaintiff as a "person of interest" who might "try to do something clever." (See Ex 0041) That is enough, at the pleading stage, to state a First Amendment retaliation claim.

### E. State cannabis-licensing law and later-enacted dwelling restrictions do not bar Plaintiff's claims.

Defendants' renewed motion leans heavily on state cannabis-licensing provisions and later rules restricting cannabis businesses in dwellings. They argue that because state law now limits cannabis businesses in dwellings and because OCM approval is required, the City's actions cannot have caused Plaintiff's injuries. This fails for several reasons.

1. **The constitutional violation is assessed at the time of the City's decision.**

Plaintiff's claims arise from what the City did on March 17, 2025—when it admitted it could allow his use by CUP but chose not to, and when it formally voted not to allow his use as a conditional use permit under the then-existing code. Later-enacted state restrictions cannot retroactively sanitize an earlier due-process and equal-protection violation.

2. **OCM does not dictate local zoning; it follows it.**

OCM's own email to Plaintiff makes clear that while OCM verifies that a business "meets local zoning compliance as a step toward licensing, OCM does not mandate what those zoning requirements are," and applicants are told to "contact the local unit of government ... to determine what those zoning requirements will be." The City cannot use state licensing as an excuse for its own decision to close the CUP path.

3. **Plaintiff's attached-garage use fits within the scope of permissible home occupations at the time.**

Plaintiff's Year-1 plan involved cultivation only, in an attached garage with its own front and rear entrances, no customer traffic, and no need for anyone to pass through livable space to access the business area. The Level-2 standards focus on precisely these impact-based factors and allow home occupations in accessory buildings.

Defendants' speculation that OCM would later reject such a configuration is just that—speculation. At this stage, the Court must accept Plaintiff's allegations that, had the City allowed the CUP path to proceed, he could and would have complied with any state-law requirements applicable at the time.

4. **Causation is not broken by hypothetical future regulatory changes.**

Finally, Defendants argue that later-enacted state restrictions mean Plaintiff could never have operated his business anyway. That argument goes to damages and mitigation, not to the existence of a completed federal constitutional violation. Even if the Court ultimately finds that some portion of Plaintiff's multi-year lost profits is not recoverable, that is a question for discovery and, if necessary, summary judgment or trial—not a basis to dismiss the case at the pleading stage.

**F. The amended complaint adequately alleges municipal liability and individual liability.**

Defendants briefly suggest that Plaintiff has failed to plead municipal policy or individual involvement. The amended complaint squarely alleges both.

- Plaintiff alleges that the P&Z Commission and City Council acted as **final policymakers** for the City with respect to home-occupation and CUP decisions, and that their actions in denying his request and amending the ordinance were acts of municipal policy attributable to the City.

- He alleges that Moran and Hill were personally involved: Moran by advising the P&Z to deny Plaintiff's use despite acknowledging it could be allowed by CUP, drafting

the retaliatory amendment, and describing Plaintiff as a "person of interest"; Hill by processing Plaintiff's request, participating in the meetings, and handling (and mishandling) his data-practices requests.

Those allegations are more than sufficient at the pleading stage to state claims against both the City and the individual defendants.

Qualified-immunity arguments are premature on a motion to dismiss where, as here, the plaintiff alleges that defendants knowingly denied him access to a process available to others, explicitly based on animus and speculative worst-case scenarios rather than neutral standards. Whether the law was "clearly established" as to each specific defendant is fact-intensive and better addressed after discovery.

### G. The MGDPA claim is properly before the Court.

Count IV of the amended complaint alleges that the City violated the Minnesota Government Data Practices Act by, among other things, withholding non-privileged public data, asserting blanket attorney-client privilege over broad categories of documents, and prematurely declaring Plaintiff's requests "complete" while still withholding responsive data. These allegations track the statute and state a plausible claim for relief.

Defendants' primary argument is that if the federal claims are dismissed, the Court should decline supplemental jurisdiction over the MGDPA claim. Because the federal claims **should not** be dismissed, supplemental jurisdiction remains proper.

Even if the Court were inclined to dismiss any federal claim, the MGDPA claim is closely intertwined with the same facts and should proceed in the interest of judicial economy and fairness, especially given Plaintiff's pro se status and the advanced state of the record.

### V. CONCLUSION

Plaintiff's amended complaint is detailed, supported by a substantial evidentiary record, (See all Exhibits) and carefully limited to his personal constitutional injuries and statutory rights. Defendants' renewed motion to dismiss invites the Court to re-weigh facts, resolve disputed inferences, and apply later-enacted state law retroactively—all impermissible at the pleading stage.

For the reasons stated above, Plaintiff respectfully requests that the Court:

1. **Deny** Defendants' Motion to Dismiss the Amended Complaint in its entirety;

2. Allow Plaintiff's federal § 1983 claims (procedural due process, equal protection, and First Amendment retaliation) and his MGDPA claim to proceed to discovery; and

3. Grant such other and further relief as the Court deems just and proper.

Dated: 01/11/2026

Respectfully submitted,

/s/ Travis P. Perry
Travis P. Perry
529 Mallory Street North
Waterville, MN 56096
507-210-0446
mn.snoeeons@gmail.com
Plaintiff, pro se