Exhibit 0069

Public Meeting Transcript (Waterville Zoning Commission)

Date: _____ • Location: _____

Speaker Key (with initials you can circle or write out)

HM – Chair: Howard Mack

JM – City Attorney: Jason Moran

TH – City Administrator: Teresa Hill

PL – Commissioner: Phillip Langerud

BA – Commissioner: Bernard (Bernie) Akeman

BF – Commissioner: Brad Ferch (if present)

TP – Applicant: Travis Perry

[UNK] – Speaker uncertain (fill in if known)

---

Line-Numbered Transcript (speaker tagged on every line)

1. HM: This item is a request for ordinance amendment for our home-based micro-cannabis business from Travis Perry.

2. TH: I know, I did it again.

3. TH: I did.

4. TH: I did it again.

TH: I put Tyler in there.

HM: I changed it.

TH: Sorry, Melissa.

TH: So, um, just, uh, Jason, had you had a chance to review?

JM: Yes.

TH: Okay.

TH: Yeah, you'll get some of this.

TH: Yeah, so you know where the discussion left off.

JM: Essentially, well, I think I do anyway.

JM: You guys chime in if you have any questions on that.

JM: But essentially, as I understand it, we have a request from Tyler Perry.

TH: Travis.

HM: Travis.

JM: Travis Perry.

JM: Travis?

TP: Yes.

[UNK]: I like it.

TP: That's because I put Tyler Perry down there.

JM: But isn't he a singer.

JM: We have a request from Travis Perry to amend some of our zoning ordinances to allow cannabis manufacture and retail sale in residential zones.

JM: Is that a fair statement?

TP: And cultivation.

JM: Sure,

JM: Sure.

JM: Above and beyond personal use cultivation.

TP: Oh, yes, for sure.

JM: This would be essentially a manufacturing-type enterprise, probably not to the level of a dispensary, I would think.

TP: Not even close.

TP: And for me, my manufacturing consists of basically making butter out of it or using a heat press and getting the oils out of it that way.

34. JM: Sure.

35. JM: So that's essentially the request: do you guys want to entertain the manufacture of THC cannabis hemp products in a non-business, non-industrial zone, and expand that to a residential zone.

36. JM: And I'll tell you that that will come with a lot of risk, because then, you know, you're opening up other uses besides this.

37. JM: For other applicants, what the neighborhood would want, I don't know, but it would set a precedent on allowing other, what I'm going to term, light, non-residential use—almost business use, commercial use, manufacturing use—in your residential zone.

38. JM: And that can be taboo, because we don't know what's going to come.

39. JM: Residential the way we have it right now is residential.

40. JM: And certainly there are some real minefields deviating from that.

41. PL: Do we have any people in residential areas only that are for hire doing mechanics work on vehicles and stuff?

42. JM: It's possible.

43. PL: They would actually be outside of…

44. HM: We don't have any licenses or nothing.

45. HM: If somebody's fixing their neighbor's car in the garage, there's not much to do about that.

46. HM: But it's not technically a business either.

47. PL: As I say, for hires, for lining up half a dozen vehicles to be ready to get to or be a part of repair work.

48. TH: The one that we have has been...

49. HM: Okay.

50. JM: The way it is set right now, we allow...

51. JM: We will allow cannabis hemp THC products to be manufactured in your Limited Industry with a conditional use permit.

52. JM: And then we also would allow in the General Industry district, if they're using an existing building, it's a permitted use.

53. JM: If they're adding a building, it's a conditional use.

54. JM: So it's not like we don't have zones for this.

55. JM: It's just that we don't allow it in a residential.

56. JM: And Council, to some extent, discussed some of this.

57. JM: We've been grappling with this for about a year and a half.

58. JM: Council was concerned with potential odors, with noise, with traffic, with waste.

59. JM: There's also an element that it draws the potential for people breaking and entering and that sort of thing.

60. JM: I mean, if they know that there's a substance there or a firearm or whatever.

61. JM: Let's say we decided to allow something like that.

62. JM: We've got those kind of issues as well.

63. JM: You know...

64. JM: I mean, that doesn't just go with this particular use.

65. JM: Again, it's what could come hereafter.

66. JM: But you do allow for manufacturing the way it is right now, and certainly if you wanted to look at, you know, one of those properties...

67. TP: You know, I thought about it before, but...

68. TP: It's about the fact that—of just being able to start something out of...

69. TP: Instead of having to go and spend a lot of money because...

70. TP: I mean, already I can manufacture in my house.

71. TP: I don't need a license or a permit by law.

72. TP: I can already do that, and I already am doing that.



73. TP: I can already grow cannabis plants in my house, which I'm doing, and you can legally do.

74. TP: I'm trying to make it to something where what I'm already doing anyways, I can do...

75. JM: On a retail basis.

76. TP: And from my aspect, and I made it pretty clear about that, I don't want people to come to my house for purchases.

77. TP: It's essentially going to be sold, you know, per harvest or online, you know, per...

78. TP: However that works.

79. JM: But you would be doing it online?

80. TP: It would be online or through, like, other dispensaries and stuff.

81. TP: There's a lot to work out yet because we're also trying to work in being able to sell to medical dispensaries, so...

82. JM: Yeah.

83. JM: The grow in the basement?

84. TP: Garage.

85. JM: In a garage?

86. TP: Yep.

87. JM: Okay.

88. TP: Yeah, for now, that would be the plan.

89. TP: I guess in that aspect, that's the biggest thing that would be used for there.

90. JM: In a garage, you know, you'd have run with potential security issues?

91. TP: Oh, yeah.

92. TP: It's going to take a little bit.

93. JM: Neighbors wouldn't be too happy with that.

94. TP: Well, the security issues, I mean, that's just basically, I guess, increasing what's already in there, like new doors and stuff like that.

95. JM: But for the public to know that you've got a grow operation, that's kind of an attractive nuisance to some people.

96. TP: That's why I definitely try to keep it down.

97. JM: Yeah.

98. JM: And that's why, frankly, you know, we would want something like this in an industrial zone, an industrial building, something a little more secure.

99. BA: Well, I'm for business.

100. BA: And for business growth.

101. BA: But I started a business 52 years ago, and I had to do it in a residential—ah, not in a residential area—

102. BA: It was a legal business area, zoning, and grew into quite a size business.

103. BA: And I can understand his situation highly, but we already have areas zoned here for that.

104. BA: And I am dead sure that if we would let this happen in residential areas, that we would end up with more headaches down the road with other people.

105. BA: And he may run it to the cleanest and the best possible.

106. BA: I believe the man would do that.

107. BA: But that doesn't tell us that the next one would.

108. JM: Correct.

109. JM: So that's where I feel that what he's able to do in his capacity is home now without—for his personal use of that—God bless him.

110. BA: But after that, we've got plenty of area out here for business to go and take and put a—what do you want to call it—vault up?

111. TP: Can I add something?

112. TP: I know this is probably kind of irrelevant.

113. TP: So, you know, it's the amount of plants.

114. TP: Like, I'm not too worried about the manufacturing or the retail.

115. TP: Basically, it's cultivation.

116. TP: But one of the things, you know, why I try to get, you know, use the business on our property is specifically because there's many loopholes with this, unfortunately.

117. TP: And one of them is, you know, you can grow as a—um, I'm trying to think of the word for it—pretty much like if somebody's a caregiver, you can grow somebody else's plants for them.

118. TP: That's an extra 16 plants on top of what you're already growing.

119. TP: You can do that for six patients.

120. TP: Already, you're at 54 plants without needing licensing, without needing special zoning approvals.

121. TP: And, you know, I don't want that.

122. TP: I would prefer to see everybody, you know, be able to do it the good way.

123. TP: And I guess have regulation.

124. TP: Because the state is very big into regulation.

125. TP: They have a lot that they allow you to do and not allow you to do.

126. TP: They're very, very, very strict about stuff.

127. TP: …and even, you know, with odors coming out of your residence—sales—you know, they check into that very prestigiously on top of everything else.

128. TP: So I know, you know, here's a problem.

129. HM: Phil, are you there?

130. PL: Is there any way that you can put stipulations on something that if they're not—if it becomes a problem—you can pull the conditional use…

131. JM: This isn't a conditional use permit.

132. HM: We're just talking about changing the zoning.

133. TP: Well, see, this would be for…

134. TP: I didn't realize that everything with those four for zoning or conditional use permit…

135. TP: It was anything to do to try to get the use out of that property.

136. HM: It was actually to change the zoning to allow…

137. HM: A microbusiness in a residential area.

138. HM: So, it's a zoning change.

139. TP: Okay.

140. HM: It's not a conditional use permit.

141. HM: It's a...

142. JM: I think to Phil's question, you know, you could make it a conditional use.

143. TP: And that's my thought.

144. TP: It was kind of along that aspect of it—doing it that way.

145. TP: I didn't realize I was trying to change the whole—

146. TP: I didn't realize I was trying to change the whole...

147. JM: You know, on the conditional use, you know, you could...

148. JM: On a conditional use permit, you know, you can require reasonable regulations concerning light and noise and vibrations and traffic and hours of operation.

149. JM: I mean, I could probably come up with 75 conditions.

150. JM: And if those conditions were violated, there's a process and procedure that is deployed to revoke that conditional use permit.

151. JM: And essentially, that process is there's got to be a hearing in front of the council.

152. JM: They've got to find that a condition has been violated.

153. JM: They've got to find that it's an essential condition.

154. JM: And then from there, there's an appellate process to the court that if the applicant feels that their permit has been improperly pulled, that that can be—

155. HM: You know, they run into the problem if he sells his building.

156. HM: The conditional use permits with that property.

157. JM: Correct.

158. HM: The next guy coming in could do the same thing you do, but may not be the great guy that—

159. JM: And I would be more concerned about expanding the uses in a residential area.

160. HM: Right.

161. JM: This is something to be concerned about, but let's say somebody all of a sudden wants to start manufacturing gunpowder, or somebody wants to start, you know, some fireworks.

162. JM: The next thing, you know, you've got a dynamite facility.

163. JM: You know, once you open—

164. JM: You know, it's one thing to have a business in a business zone.

165. JM: It's another thing to have a business like this, a manufacturer in an industrial zone.

166. JM: But once you start expanding that into a residential area, you're going to have residents who are like, "What the hell?"

167. JM: "I bought this for my house, and here's this guy running an explosive manufacturing."

168. JM: So, you know, you run afoul of what the true intent is on a residential zone.

169. TP: Yeah, would there be a way to change it to, like, a conditional use?

170. TP: I just kind of think...

171. JM: There is, but I think I'm just giving you the case for not doing that.

172. HM: I don't think that that's it.

173. TP: Because essentially, you know, the biggest thing with it is, it's pretty much starting the plants.

174. TP: They're not going to basically full harvest.

175. JM: I get it, but again, the concern is, once you open that door, here comes something additional.

176. JM: Can the council do a conditional use part—make it a conditional use?

177. JM: Yes, legally we can.

178. JM: Should they?

179. JM: No.

180. JM: So, you know, they have an industrial district.

181. BA: Yep.

182. HM: Brian, do you have a motion?

183. [Brian]: I don't know how to word it. Deny the request.

184. [Brian]: I make a motion to deny the permit to have it out there.

185. [Brian]: I prefer it to be in an industrial area. Make a motion on it.

186. HM: Second.

187. HM: To deny the request for changing the zoning.

188. TH: Okay.

189. TH: Because he has motions that permit.

190. TH: So, if you wanted, if you were looking at that, you could…

191. HM: Denying the request for changing the zoning.

192. TH: The zoning, and then not to allow it as a use, as a conditional use permit. That's what he's getting at.

193. HM: I second it.

194. HM: Any discussion?

195. HM: All in favor, say aye.

196. Commissioners: Aye.

197. HM: Opposed?

198. [UNK]: —

199. HM: Motion carries.

200. HM: I think the way it reads is you can do whatever you want right now; you're just trying to ask for permission.

201. HM: I'm guessing you're going to have to go down the road of forgiveness instead of permission.

202. TP: One thing is, you know, we just got Scott County approved on this issue, so that was a big thing, because that's where our second plant was going to be.

203. TP: This would have been a plant to pretty much produce seedlings and seeds and other stuff.

204. TP: It would have been a good venture, but at least I tried. I appreciate you guys for the time.

205. JM: Look at some of those industrial areas.

206. TP: It's just not worth it for me to have to spend, you know, something we don't have already.

207. TP: This is a,,we have opportunity because we have 40 acres of land we're using for our other facility, you know, this is an opportunity, I guess, just to add extra revenue on top of what we're going to be already getting.

208. TP: So it was a try, you know, we're new to this town, we figured, hey, you know, we were part of the flood too, we know the town needs help just as bad.

209. JM: Very good, thank you again.

210. TP: Thank you.

211. HM: Anybody else got any last?

212. HM: Phil, you have anything?

213. PL: I do not.

214. HM: Teresa?

215. TH: I do not.

216. HM: Rock and roll, let's accept a motion to adjourn.

217. BA: I make a motion to adjourn.

218. PL: Second.

219. HM: Moved and seconded we adjourn. All in favor say aye.

220. All: Aye.

221. HM: Opposed? Motion carries.

---

Transcriber's Certification (fill and sign)

I, _____, certify that the foregoing is a true and accurate transcription of the public meeting audio described above, to the best of my ability.

Date: _____    Signature: _____