## UNITED STATES DISTRICT COURT
## IN THE
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Travis Perry, | ) Civil Action No.: 0:25-cv-3352-LMP-LIB |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **DEFENDANTS' REPLY** |
| | ) **MEMORANDUM OF LAW IN** |
| City of Waterville, official capacity; | ) **SUPPORT OF ITS RULE 12(b)** |
| Jason Moran, in his official and | ) **MOTION TO DISMISS PLAINTIFF'S** |
| individual capacities; Teresa Hill, in her | ) **AMENDED COMPLAINT** |
| official and individual capacities; and | ) |
| Waterville Zoning Commission, official | ) |
| capacity. | |
| Defendants. | |

## <u>INTRODUCTION</u>

Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted by this Court and Plaintiff lacks standing to pursue these claims even if they did exist. Accordingly, Plaintiff's action must be dismissed under Fed. R. Civ. P. 12(b)(1) and (b)(6). Because Plaintiff has failed to show that his complaint states a valid claim, the City respectfully requests that the amended complaint be dismissed with prejudice.

## <u>ARGUMENT</u>

### I.   Plaintiff Has Identified Nothing Correcting the Defects in Standing

Plaintiff must possess standing to pursue his claims. Since he does not, his amended complaint must be dismissed. Standing requires that Plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely

1

to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiff's alleged injury is not traceable to the City because independent regulations from the State of Minnesota Office of Cannabis Management (OCM) already forbid operating a home cannabis occupation such as Plaintiff sought. Plaintiff continues to erroneously assert that since the City handles zoning regulation, any injury must automatically be attributable to the City. Plaintiff additionally asserts without justification that since he planned to profit from his business entity, he has standing to bring claims in its name. None of his arguments are correct.

Plaintiff brings a claim for damage to a business incorporated as an LLC. Such claims must be pursued by the LLC on its own behalf. Minn. Stat. §§ 322C.0102, subd. 12, 322C.0902. As Plaintiff has filed this claim personally, he lacks standing to pursue litigation on behalf of the LLC. Plaintiff argues that he has standing because the LLC is a mere "vehicle to operate the business." Pl. Response, Doc. 57-2, at 7. Plaintiff argues that, since he planned to profit from the operation of the LLC, and the LLC planned to use a property he owned, the claims remain personal to him and not the LLC. However, just because the members of an LLC stand to profit from its operations does not automatically convert claims from derivative to personal. *Sears v. U.S. Trs. (In re AFY)*, 734 F.3d 810, 820 (8th Cir. 2013). The "damages" alleged here are from the business's inability to operate. Accordingly, the claims—to the extent they exist—belong to the business. And simply stating that Plaintiff considers the LLC a "vehicle" does not change the fact that the business, not Plaintiff, held the preliminary license approval. Plaintiff cannot simply ignore

2

the rules governing business entities because he finds them inconvenient. *Id*. Plaintiff lacks standing to pursue the claims personally.

Plaintiff now argues that the OCM regulations forbidding home occupations do not apply to him because they were enacted after he applied for a license from OCM. Doc. 57-2, at 10. This is simply false. As an applicant for a license from OCM, Plaintiff is subject to the agency's promulgated rules. Minn. Stat. § 342.14, subd. 6. OCM's rules were first published in the Minnesota State Register on January 13, 2025. 49 SR 779. The rules were then finalized on April 25, 2025. 49 SR 1143. Plaintiff received his license preliminary approval on April 24, 2025. However, a preliminary approval does not contain any approval of any location for the business. Minn. Stat. § 342.14, subd. 5. Nor does it allow for any business operations. *Id*. All a preliminary approval does is allow a business to apply for further steps toward approval. Thus, any application Plaintiff submitted for final licensure would have been subject to the OCM rules prohibiting home occupations, and would have been denied. Because it can be said with certainty that Plaintiff could never have secured licensure to operate a cannabis business from his home because of State regulations, the City's actions are moot and Plaintiff's alleged injuries are not fairly traceable to the City. *Cashman v. Allied Prods. Corp.*, 761 F.2d 1250, 1252 (8th Cir. 1985).

## II.    Plaintiff's Amended Complaint Fails to State a Valid Claim for Relief

Plaintiff's Amended Complaint fails to allege the necessary elements required for a valid claim for relief. In his attempt to address these deficiencies, Plaintiff simply re-states the conclusory allegations in his complaint. But Plaintiff cannot rely on speculative and

conclusory statements, and must actually show that his claims are "plausible on [their] face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A.    *Plaintiff has Still Not Identified a Federal Right Underlying His Claims*

Plaintiff "cannot seek relief in federal court under section 1983 based on alleged violations of Minnesota laws." *Nicolaison v. Milczark*, 26 F. App'x 596, 597 (8th Cir. 2002). Rather, Plaintiff must identify a federal right and provide valid factual allegations explaining how the City violated this right. Plaintiff has failed to do so. Plaintiff's only allegation continues to be that the City violated its own code regarding Level 2 home occupations. Doc. 57-2, at 7.

B.    *Plaintiff Cannot Plead All Necessary Elements of his Claims*

To support his amended complaint, Plaintiff in his response largely restates the allegations it contains. But these allegations were conclusory and insufficient in the complaint, and have not become valid simply through their inclusion in Plaintiff's response memorandum.

Throughout his amended complaint and response memo, Plaintiff continues to suggest that the City admitted it was breaking the law regarding him. This is simply not true. As explained before, *see* Doc. 52, at 17, the City declining to change its code to allow Plaintiff's proposed use does not constitute an admission that the use was already allowed. Plaintiff points to another exhibit in which he claims the City acknowledged breaking its ordinances. *See* Doc. 57-5. But this court is not bound by Plaintiff's characterization of the exhibit, and is free to read it for itself. *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 994

4

(8th Cir. 2016). The transcript Plaintiff cites is clear. In it, Plaintiff appears before the City Planning and Zoning Commission. The City Attorney sums up the business before the commission: "a request from Travis Perry to amend some of our zoning ordinances to allow cannabis manufacture and retail sale in residential zones." Doc. 57-5, at 3:24. Plaintiff agrees with this summary. *Id*. at 3:30. Later in the discussion, one of the commission members begins discussing conditional use permit conditions, and the City Attorney again clarifies that the only item the Commission was discussing was proposed zoning changes, not a CUP application. *Id*. at 11:130–31. Another commissioner chimes in to agree that the business of the day is "not a conditional use permit." *Id*. at 11:140. The City Attorney then mentions that the City could amend its code to create a new, specific CUP for cannabis businesses. *Id*. at 12:142. It is in this context—a discussion of creating a *new and different* conditional use within the city code—that the City attorney states that the council could, but in his opinion should not, amend the code to create a CUP for cannabis businesses. *Id*. at 14:176–179. There was no discussion whatsoever of whether Plaintiff's proposed business would be allowable under any existing ordinances, and certainly no admission by the City that it was breaking the law to target Plaintiff. This is also the context in which the Commission voted on conditional use permits: it voted to deny amending the city code to create a new conditional use permit, not to decide an application for a CUP under the existing code. *Id*. at 15:191–92. The Commission could not have voted on an application

5

under the existing code because Plaintiff had never submitted one. The record before this Court cannot support the claims for relief.[1]

### 1.    Plaintiff's Due Process Claim Fails

Plaintiff must exhaust available state remedies before turning to federal court. Raymond v. Bd. of Regents of the Univ. of Minn., 847 F.3d 585, 589 (8th Cir. 2017). Plaintiff alleges the City denied him the right to a fair hearing on a CUP application. But Plaintiff never actually submitted a CUP application, failing to exhaust his remedies. Plaintiff argues that the action by the City's Planning and Zoning Commission, discussed above, made any such application futile. But Plaintiff cannot retroactively pretend that he pursued a path for approval that he never did. The Planning and Zoning Commission did not foreclose a CUP application under existing city code, because the discussion Plaintiff cited does not bear any relevance to such an application. The Commission only discussed, and confirmed with Plaintiff personally that it would only be discussing, possible new changes to the code. A refusal to change the code does not automatically mean that City would not have fairly considered an application under the existing code.

Perhaps more importantly, though, Plaintiff still misconstrues the standard for futility. "Unsupported and speculative claims of futility do not excuse a claimant's failure to exhaust his or her administrative remedies." *Midgett v. Washington Group Intern. Long Term Disability Plan*, 561 F.3d 887, 898 (8th Cir. 2009). Plaintiff must show more than

---

[1] Plaintiff's claim under the Minnesota Government Data Practices Act fails, as stated in the City's initial memorandum, for lack of supporting factual allegations.

the likelihood the City would deny his application, he must show that the City *could not* effectively grant him the relief he sought. *Raymond v. Bd. of Regents of the Univ. of Minn.*, 847 F.3d 585, 592 (8th Cir. 2017). Plaintiff can show nothing to this effect. He failed to exhaust his remedies, and accordingly his due process claim must be dismissed.

Further, Plaintiff has still not identified a vested property right supporting his claim. He simply restates his claim, refuted above, that the City somehow admitted he was entitled to a CUP under the existing code. Plaintiff cites to no other legal authority showing a protected property interest in a prospective business. That is because there is none. *Deep Dish, Inc. v. City of Minneapolis*, No. A04-728, 2005 Minn. App. LEXIS 236, at *10 (Ct. App. Mar. 8, 2005).

2.    Plaintiff's Equal Protection Claim Fails as a Matter of Law

A valid equal protection claim requires showing that the plaintiff was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff bears the burden of pleading that he is similarly situated "in all relevant aspects" to the group he compares himself to. *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004). Plaintiff has still not identified a single other supposedly similarly situated individual or business that has been treated differently. Instead, he alleges that denying him a CUP constitutes different treatment per se because he thinks he should have been approved. Pl. Response, Doc. 57-2 at 9. Again, Plaintiff does not recognize the difference between denying a request to amend the code and denying a CUP application under the existing code. The City never

7

denied him a conditional use permit, because he never applied for one. Plaintiff simply assumes that both he qualified for a CUP under the existing code and that the City would have unfairly denied it. But this court is not bound by conjecture and assumption, and Plaintiff's mere speculation is not enough to support his claims. Plaintiff must instead "provide a specific and detailed account of the nature of the preferred treatment of the favored class." *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015). Plaintiff cannot do so.

The closest Plaintiff comes to identifying a supposedly similarly situated point of comparison is his statement that the City left "other level-2 home occupations available by CUP." Pl. Response, 57-2 at 9. Again, Plaintiff must show not only that there were other home occupations, but that those home occupations are similarly situated "in all relevant aspects." *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004). This means there must be no "reasonably conceivable state of facts that could provide a rational basis for the classification." *Knapp v. Hanson*, 183 F.3d 786, 788 (8th Cir. 1999) (quotation omitted). But at-home cannabis businesses are clearly not similarly situated to non-cannabis businesses. *See* Doc. 52, at 20. Plaintiff submits no argument otherwise; he simply states that the two are similar. The Court is not bound by such conclusory statements.

3.  Plaintiff Identifies no Adverse Action Chilling the Speech of an Ordinary Person

To survive the City's motion, Plaintiff must show that the City took adverse action against him that would cause a "person of ordinary firmness" to cease any further protected

speech. *Eggenberger v. W. Albany Twp*., 820 F.3d 938, 943 (8th Cir. 2016). This requires subjecting Plaintiff to the "punitive machinery of government." *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003). Plaintiff has failed to allege any such punitive action. Instead, he simply states another time that the City denied his request to amend city code and changed its city code to forbid all at-home cannabis businesses, operated by any individual. This, as can be seen from this very lawsuit, has done precisely nothing to chill Plaintiff's speech. Nor would it have done anything to chill any ordinary person's speech. It would be absurd to countenance the idea that every time a city fails to pursue a suggested policy it violates the First Amendment. But nothing beyond that has occurred here. Accordingly, Plaintiff's first amendment claim must be dismissed.

## **CONCLUSION**

If Plaintiff has been harmed, it is not by the City of Waterville, but by the regulator actions of the state of Minnesota. The City is not liable to Plaintiff on any theory under the facts pled by him. The City respectfully requests that this Court dismiss the Amended Complaint in its entirety.

**CAMPBELL KNUTSON**
*Professional Association*


Dated:  January 23, 2026                    By: /s/ Jared D. Shepherd
                                            John S. Brooksbank (#0402593)
                                            Jared D. Shepherd (#0389521)
                                            Grand Oak Office Center I
                                            860 Blue Gentian Road, Suite 290
                                            Eagan, MN 55121
                                            Telephone: (651) 234-6235
                                            jbrooksbank@ck-law.com
                                            jshepherd@ck-law.com

                                            *Attorneys for Defendant City of Waterville*