**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

TRAVIS PAUL PERRY,

Plaintiff,

v.

CITY OF WATERVILLE; JASON
MORAN, *in his official and individual
capacities*; TERESA HILL, *in her official
and individual capacities*; and
WATERVILLE ZONING
COMMISSION,

Defendants.

Case No. 25-cv-3352 (LMP/LIB)

**ORDER GRANTING DEFENDANTS'**
**MOTION TO DISMISS**

Travis Paul Perry, pro se.

Jared D. Shepherd and Sharda Enslin, **Campbell Knutson PA, Eagan, MN**, for
Defendants.

In 2023, Minnesota established a regulatory and licensing framework for the state's
cannabis industry.  Plaintiff Travis Paul Perry wanted in on the action, so he petitioned the
City of Waterville (the "City") to allow him to operate a cannabis cultivation business from
his home garage.  The City responded by passing an ordinance prohibiting City residents
from operating a cannabis business from their homes.  Perry now brings suit, asserting that
the City's ordinance violates his due process and equal protection rights.  Perry also alleges
that City officials retaliated against him and failed to properly respond to his public-records
requests.  Defendants move to dismiss Perry's amended complaint.  For the following
reasons, the motion is granted.

1

## BACKGROUND

### *Minnesota's Regulation of the Cannabis Industry*

In 2023, Minnesota legalized recreational cannabis and established a statutory framework for the state's cannabis industry. *See generally* Minn. Stat. §§ 342.01 *et seq.* Minnesota's Office of Cannabis Management ("OCM") is tasked with promulgating regulations for the cannabis industry. *Id.* § 342.02, subd. 2(a)(1); *see* Minn. R. 9810.0100 *et seq.* To operate, all cannabis businesses must comply with applicable state regulations and obtain a license issued by OCM. Minn. Stat. § 342.10. Although local governments may not prohibit "the establishment or operation of a cannabis business," a local government "may adopt reasonable restrictions on the time, place, and manner of the operation of a cannabis business provided that such restrictions do not prohibit the establishment or operation of cannabis businesses." *Id.* § 342.13(b)–(c).

To acquire a cannabis business license, prospective businesses must first submit an application to OCM. *See* Minn. Stat. § 342.14. If an applicant successfully submits all required initial information, then OCM may issue the applicant a "preliminary approval" of their license. *Id.*, subd. 5. After the applicant receives preliminary approval, the applicant submits their proposed business location to OCM, which then forwards the application to the relevant local government. *See id.*, subd. 6. The local government then considers the proposed business location and notifies OCM whether the proposed location meets all relevant local land use regulations. *Id.* § 342.13(f). OCM "may not issue a license" if the local government informs OCM that the proposed business location "does not meet local zoning and land use laws." *Id.*

Relevant here, OCM's regulations provide that a cannabis business may not conduct its activities in a "dwelling," Minn. R. 9810.1100, subp. 4, which is defined in the regulations as "a physical structure where people live, such as a house, an apartment, or another type of residential structure," Minn. R. 9810.0200, subp. 22. Similarly, cannabis cultivation may not occur in "dwellings," and any cultivation activities must "occur in an area of the cultivator's premises that can be accessed without passing through a dwelling." Minn. R. 9810.2000, subp. 8(A).

### *The City's Zoning Framework*

The City regulates land use through its zoning code. *See* Waterville, Minn., Code of Ordinances ("City Code") §§ 150.01 *et seq.*[1] Perry's property is located in the R-2 zone, which is generally zoned for residential use. *See id.* § 150.07; ECF No. 47 ¶ 23. The City permits certain occupations to be conducted from homes, and the City classifies those home occupations as either Level 1 or Level 2. Level 1 home occupations are minimally intensive uses, which generally create no detectable change to the premises and create no demand on utilities beyond a normal residence without a home occupation. City Code § 150.03(Q)(1). A person may conduct a Level 1 home occupation in the R-2 zone without any permission from the City. *See id.* § 150.07(B)(6). On the other hand, a Level 2 home occupation in the R-2 zone has a "higher intensity of use," *id.* § 150.03(Q)(2), and requires the issuance of a conditional use permit ("CUP"), *see id.* §§ 150.03(Q)(2), 150.19. To obtain a CUP, a person must file an "official application form" with the City's Zoning

---

[1] The City's Code of Ordinances may be found at https://cityofwatervillemn.gov/ documents/769/Ordinance_Book_pdf.pdf [https://perma.cc/L5GA-3GR6].

Administrator, submit all "written and graphic materials" necessary to explain the proposed use, and demonstrate that the application meets all necessary standards. *Id.* § 150.19(A)(1).

***Perry's Experience with the City***

In early 2025, Perry sought to open a cultivation-only cannabis microbusiness[2] from his "attached or detached garage" at his residential property. ECF No. 47 ¶¶ 2, 21. To apply for a license from OCM, Perry formed a single-member LLC of which he is the "sole owner and decision-maker." *Id.* ¶ 12. In January 2025, Perry wrote the City Council to "request[] consideration for a home-based cannabis microbusiness license" and "propose[d] an amendment to the City's zoning ordinances to specifically permit such businesses within designated residential zones." ECF No. 1-2 at 21.[3] Perry explained that all of the business's activities would be conducted indoors and that he would commit to "minimiz[e] impact on the neighborhood and environment." *Id.* at 20. Specifically, Perry committed to use an alarm and surveillance system to ensure neighborhood safety, promised to install a "high-quality ventilation system" and "carbon filters" to minimize odor issues; committed to minimize any impact on traffic and parking, such as by instituting designated parking and an appointment-based sales process; and expressed

---

[2]   A microbusiness is a "license type allowing for a degree of vertical integration, with a single business potentially able to undertake cultivation, manufacturing, and retail sales activity (subject to caps on the size of each type of activity)." ECF No. 52 at 4 (citing Minn. Stat. § 342.28).

[3]   In evaluating a motion to dismiss, the Court may consider public records, exhibits attached to the complaint, and materials embraced by the complaint. *See Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008). All of the documents referenced in this Order may be considered on a motion to dismiss because they are either public records, referenced in the amended complaint, or attached to the original complaint.

openness to participate in a "community meeting to address any concerns raised by nearby residents or city members." *Id.*

The City Council met on February 4, 2025, and considered Perry's letter as a request to amend the City Code. *See id.* at 16, 18–19. The City Council referred Perry's request to the City's Planning and Zoning Commission ("Zoning Commission"). ECF No. 47 ¶ 29. The Zoning Commission considered Perry's request at its February 19, 2025 meeting but deferred making a decision on whether to amend the City Code until it received more information from the City Attorney, Jason Moran. ECF No. 1-2 at 32–33. On March 17, 2025, members of the Zoning Commission again considered Perry's request and discussed the "[f]ear of smell, noise, traffic, water, [and] crime" that could result from allowing a cannabis business to operate in a residential area. ECF No. 1-3 at 1–2. The Zoning Commission recognized that the City could grant applicants a CUP to operate a cannabis business in a residential area, but, ultimately, the Zoning Commission unanimously agreed not to amend the City Code to allow the operation of a cannabis business in a residential area. *Id.* at 2.

On March 27, 2025, Moran wrote the City Administrator, Teresa Hill, suggesting that the City consider prohibiting cannabis businesses as a home occupation entirely. *Id.* at 3–4. Moran stated that he would like to "get ahead of dangerous occupations," given that OCM was preparing to issue cannabis business licenses, and because "we have a person of interest in town that may try to do something clever." *Id.*

On April 1, 2025, the City introduced an ordinance limiting the types of businesses that qualify as home occupations (referred to here as the "Challenged Ordinance"), which

the City Council enacted after a second reading on May 6, 2025.  ECF No. 53-8 at 2; ECF No. 53-9 at 1.  The Challenged Ordinance provides that no home occupation could include the manufacture, assembly, growing, packing, wholesale, or retail sale of any "firework, firearm, gun powder, explosive, cannabis product, cannabis concentrate, cannabis flower, or any other cannabinoid product as defined in Minnesota Statutes Chapter 342."  ECF No. 53-7.

Shortly before the City adopted the Challenged Ordinance, Perry received preliminary approval from OCM for a cannabis business license.  ECF No. 1-3 at 7.  After receiving preliminary approval, Perry did not seek a CUP from the City, nor did he seek any City approval for his cannabis business.  *See* ECF No. 47 ¶ 37.  Instead, Perry brought this lawsuit on August 21, 2025, ECF No. 1, and later filed an amended complaint on December 12, 2025, ECF No. 47, asserting four claims.  *First*, Perry alleges that the City's decisions to deny his request to amend the zoning laws and instead to enact the Challenged Ordinance violated his procedural due process rights under the Fourteenth Amendment. *Id.* ¶¶ 53–59.  *Second*, Perry alleges that the Challenged Ordinance violates his equal protection rights under the Fourteenth Amendment.  *Id.* ¶¶ 60–67.  *Third*, Perry alleges that Defendants retaliated against him for petitioning the City to amend its zoning code in violation of the First Amendment by instead adopting the Challenged Ordinance.  *Id.* ¶¶ 68–73.  Finally, Perry alleges that the City and Hill failed to properly respond to his public-record requests under the Minnesota Government Data Practices Act ("MGDPA"). *Id.* ¶¶ 74–79.

Defendants move to dismiss the amended complaint on jurisdictional and merits grounds. ECF No. 50.

## ANALYSIS

Defendants first seek dismissal under Federal Rule of Civil Procedure 12(b)(1), arguing that Perry has not established standing to sue and that the Court accordingly lacks subject-matter jurisdiction. ECF No. 52 at 8. Alternatively, Defendants argue that Perry fails to state a claim and seek dismissal under Rule 12(b)(6). *Id.*

## I.    Perry's Standing To Sue

Standing "must be decided first by the court and presents a question of justiciability; if it is lacking, a federal court has no subject-matter jurisdiction over the claim."[4] *Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist.*, 813 F.3d 1124, 1128 (8th Cir. 2016) (citation omitted). Article III of the U.S. Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement."

---

[4]    Under Rule 12(b)(1), a defendant may raise either a "facial" or a "factual" challenge to a court's subject-matter jurisdiction. *Scott v. UnitedHealth Grp., Inc.*, 540 F. Supp. 3d 857, 861 (D. Minn. 2021). On a facial challenge, "the court restricts itself to the face of the pleadings" and "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). By contrast, "[i]n a factual attack, the court considers matters outside the pleadings." *Id.* In the latter case, the party asserting federal jurisdiction must establish the existence of subject-matter jurisdiction by a preponderance of the evidence, *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018), and the petitioner's factual allegations are not entitled to any presumption of truth, *Osborn*, 918 F.2d at 729 n.6. Here, Defendants rely only on information in and embraced by the pleadings, so the Court construes Defendants' motion to raise a facial challenge to subject-matter jurisdiction.

7

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To meet the "irreducible constitutional minimum" required to establish standing, a plaintiff must show that (1) he suffered an injury in fact, (2) that is fairly traceable to the defendant's conduct, and (3) that is likely to be redressed by a favorable judicial decision. *Arc of Iowa v. Reynolds*, 94 F.4th 707, 710 (8th Cir. 2024) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

Defendants present two arguments as to why Perry lacks standing to sue: (1) any injury Perry suffered is not traceable to the City; and (2) Perry's claim belongs to the LLC which he formed to conduct his cannabis business, not to Perry as an individual. ECF No. 52 at 10–14. Neither argument is persuasive.

### a.    Lack of Traceability

Defendants first argue that Perry's purported injury—the inability to operate a cannabis business from Perry's "attached or detached garage," ECF No. 47 ¶ 21—is not traceable to the City because "above and beyond the City's zoning ordinances," Perry's proposed business was forbidden under OCM's regulations. *See* ECF No. 52 at 10–12. Specifically, Defendants point to OCM's regulations prohibiting any cannabis business from operating in a "dwelling." Minn. R. 9810.1100, subp. 4; 9810.2000, subp. 8(A).

Defendants' argument raises a question of regulatory interpretation, which is subject to the same rules as statutory interpretation. *See Pitman Farms v. Kuehl Poultry, LLC*, 48 F.4th 866, 875 (8th Cir. 2022). When interpreting state regulations, a court looks to the state's rules of statutory interpretation. *Id.* The first step of the interpretative process is to "examine the [regulation's] language to determine whether the words of the law are clear and free from all ambiguity." *Cocchiarella v. Driggs*, 884 N.W.2d 621, 624 (Minn. 2016)

8

(citation omitted).  If the regulation's language is clear, a court applies the plain language of the regulation.  *Id.*  If a regulation is ambiguous—that is, if "it is subject to more than one reasonable interpretation"—then a court may apply the canons of construction to resolve the ambiguity.  *State v. Thonesavanh*, 904 N.W.2d 432, 435 (Minn. 2017) (citation omitted).

OCM's regulations prohibit the operation of a cannabis business in a "dwelling," which is defined as "a physical structure where people live, such as a house, an apartment, or another type of residential structure."  Minn. R. 9810.0200, subp. 22.  Defendants argue that Perry's "attached or detached garage" counts as a "dwelling" under OCM's regulations, and therefore his proposed cannabis business is prohibited under OCM's regulations.  The Court concludes that whether the term "dwelling" in Minn. R. 9810.0200, subp. 22, encompasses Perry's attached or detached garage is ambiguous because the term "dwelling" in this context "is subject to more than one reasonable interpretation." *Thonesavanh*, 904 N.W.2d at 435.

For starters, "dwelling" under OCM's regulations means "a physical structure where people live," Minn. R. 9810.0200, subp. 22, but, of course, "people" do not usually "live" in a garage, *see State v. Busby*, 505 P.3d 932, 936 (Okla. Crim. App. 2022) ("[A garage] does not form part of the everyday activity of 'dwelling.'  One does not simply dwell in their garage.").  And although some courts have concluded that a garage constitutes an "integral part of the house" and therefore part of a "dwelling," *Lacey v. Commonwealth*, 675 S.E.2d 846, 851 (Va. Ct. App. 2009) (quoting *People v. Cook*, 135 Cal. App. 3d 785, 795 (Cal. Ct. App. 1982)), other courts hold that a garage (particularly a detached one) is

9

not part of a "dwelling," *see Corona v. Superior Ct.*, 65 Cal. App. 5th 950, 958 (Cal. Ct. App. 2021) (holding that a detached garage was not a "dwelling house"); *see also State v. Kjono*, No. A15-2073, 2017 WL 24768, at *4 (Minn. Ct. App. Jan. 3, 2017) (considering whether a garage constituted a "connected structure" under burglary statute and noting that "[n]ot all attached garages are dwellings").

Here, Perry sought to operate his cannabis business from his "attached or detached" garage.   ECF No. 47 ¶ 21.   But given the above case law, it is not clear that OCM's "dwelling" regulations prohibit the operation of a cannabis business in Perry's attached or detached garage.   If they do not, then Perry's injury is directly and uniquely traceable to the Challenged Ordinance which squarely prohibits such a business.

When a regulation is ambiguous, a court may resort to the post-ambiguity canons of construction.   *Thonesavanh*, 904 N.W.2d at 435.   Such canons include those pertaining to "related statutes," "the mischief to be remedied," "the object to be attained," and "former law."   *State v. Plancarte*, 20 N.W.3d 30, 38 (Minn. 2025) (citations omitted).   Relevant legislative history may also be consulted to resolve the ambiguity.   *In re Welfare of J.B.*, 782 N.W.2d 535, 545 (Minn. 2010).   Here, however, neither party offers any analysis to resolve that ambiguity.   The Court, therefore, need not resolve the ambiguity.   *See In re Vera T. Welte Testamentary Tr.*, 96 F.4th 1034, 1039 (8th Cir. 2024) (explaining that a court is "not obliged to consider" an "undeveloped argument").   For now, Perry has established that it is at least plausible that OCM's "dwelling" regulations do not prohibit operating a cannabis business in an attached or detached garage.   That is sufficient to reject Defendants' first standing argument.

10

**b.** **Lack of Injury to Perry**

Defendants next argue that any injury from the Challenged Ordinance was suffered by the LLC that Perry formed to operate the business. Defendants observe that the LLC—not Perry—received preliminary approval to operate a cannabis business and that any economic loss of income would have been felt by the LLC, not Perry himself. ECF No. 52 at 12–14; *see* ECF No. 47 ¶ 12. Consequently, Defendants assert that Perry is effectively bringing a derivative action, which imposes several procedural requirements, none of which Perry has followed. *See* Minn. Stat. § 322C.0902(1); Fed. R. Civ. P. 23.1.

Defendants' argument fails because Perry's claim is, at least in part, direct, not derivative. Whether a claim is derivative or direct is a question of state law. *See Popp Telecom, Inc. v. Am. Sharecom, Inc.*, 361 F.3d 482, 492 (8th Cir. 2004). In Minnesota, a shareholder asserting a cause of action belonging to an LLC must assert "a 'derivative' action on behalf of the [LLC] rather than in a direct action by the individual shareholder." *Nw. Racquet Swim & Health Clubs, Inc. v. Deloitte & Touche*, 535 N.W.2d 612, 617 (Minn. 1995). However, an individual shareholder may bring suit directly if he suffers an injury "separate and distinct" from the LLC and other shareholders. *Id.*; *see Wessin v. Archives Corp.*, 592 N.W.2d 460, 464 (Minn. 1999) (evaluating "whether the complained-of injury was an injury to the shareholder directly, or to the corporation").

Perry alleges at least one injury distinct from the LLC: the invasion of his personal property rights. Perry alleges that he—not the LLC—owns the property on which the cannabis business would operate. ECF No. 47 ¶¶ 2, 21, 23. Perry, however, alleges that he is precluded from using his personal property to operate a cannabis business. ECF

11

No. 57-2 at 6 (Perry identifying one of the injuries he suffered as the impairment of "the right to use his own residential property for a lawful Level 2 home occupation"). The "wrongful interference with property rights" is a quintessential form of Article III injury. *Bassett v. Cred. Bureau Servs., Inc.*, 60 F.4th 1132, 1137 (8th Cir. 2023). That is not an injury suffered by the LLC; rather, it is an injury that is "separate and distinct" from the LLC and "individual" to Perry as the owner of the property.[5] *Nw. Racquet Swim & Health Clubs*, 535 N.W.2d at 617. Perry therefore has standing to bring this direct action.

## II.    Merits Arguments

Defendants alternatively challenge Perry's claims on the merits. ECF No. 52 at 15–26. In reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Perry

---

[5]    Notably, Defendants seem to recognize that Perry, not the LLC, would be responsible for applying for a CUP to operate a Level 2 home occupation on Perry's property. ECF No. 52 at 17; *see* City Code § 150.19.

is proceeding pro se, the Court is mindful to liberally construe his filings. *See Lamar v. Payne*, 111 F.4th 902, 907 n.2 (8th Cir. 2024).

All of Perry's federal claims fail on the merits, and the Court declines to exercise supplemental jurisdiction over Perry's sole state-law claim.

### a.      Procedural Due Process

Perry alleges that his procedural due process rights were violated when the City rejected his request to amend its zoning laws to permit cannabis businesses in residential areas and instead enacted the Challenged Ordinance prohibiting those very businesses. ECF No. 47 ¶¶ 53–59.  Defendants respond that Perry has not exhausted his state remedies before bringing this claim.  ECF No. 52 at 17.  "Generally, a plaintiff is not required to exhaust state administrative remedies as a prerequisite" to bringing a Section 1983 claim. *Hopkins v. City of Bloomington*, 774 F.3d 490, 492 (8th Cir. 2014).  However, the Eighth Circuit has recognized a narrow exception to that rule: "a litigant asserting a deprivation of procedural due process must exhaust state remedies before such an allegation states a claim under" Section 1983. *Id.* (citation omitted).  The "exhaustion requirement is an affirmative defense that a defendant must plead and prove." *Raymond v. Bd. of Regents of the Univ. of Minn.*, 847 F.3d 585, 589 (8th Cir. 2017) (citation omitted).  However, "if an affirmative defense is apparent on the face of the complaint, that defense can provide the basis for dismissal under Rule 12(b)(6)." *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012) (citation modified).

Perry's pleadings reveal that he did not apply for a CUP before initiating this lawsuit. ECF No. 47 ¶ 37.  In failing to do so, Perry has not exhausted his state administrative

13

remedies.  *See Solum v. Bd. of Cnty. Comm'rs for Cnty. of Houston*, 880 F. Supp. 2d 1008, 1013 (D. Minn. 2012) (holding that plaintiffs failed to exhaust state administrative remedies in a zoning dispute when the plaintiffs did not appeal the denial of their zoning variance application); *Saba v. City of Farmington*, No. 4:05CV02000-RWS, 2006 WL 897153, at *3 (E.D. Mo. Mar. 31, 2006) (dismissing procedural due process claim because the plaintiffs did not attempt "to utilize the available processes" for seeking a zoning variance).

Perry resists this conclusion by suggesting that his January 2025 letter to the City Council was a CUP application, which the Zoning Commission denied.  ECF No. 47 ¶ 4; *see* ECF No. 57-2 at 8.  The Zoning Commission construed Perry's correspondence not as a CUP application, but as a request to legislatively amend the City's zoning code.  ECF No. 1-3 at 1–2.  Moreover, the letter could not have served as a formal CUP application, given that the City Code requires a CUP application to be submitted with a fee to the "*Zoning Administrator*" on an "*official application form.*"  City Code § 150.19(A)(1) (emphasis added).  Here, Perry did not submit his request on an official application form to the Zoning Administrator, *see* ECF No. 1-2 at 20–21, nor does he allege that he paid the applicable filing fee.  More to the point, the Zoning Commission cannot deny a CUP application; rather, the decision whether to approve or to deny a CUP application rests solely with the City Council.  *See* City Code § 150.19(A)(4)(c) (explaining that the Zoning Commission only makes a "written recommendation" on a CUP application which is forwarded "by the Zoning Administrator for consideration by the City Council"); *see id.* § 150.19(A)(5) (providing the City Council with authority to make a "decision" on a CUP

application).   Perry points to a portion of the Zoning Commission's March 17, 2025 meeting minutes which states that the Zoning Commission voted "to deny the request of changing the zoning and not to allow [cannabis business] as a use as a conditional use permit."   ECF No. 1-3 at 2.   However, given that Perry never submitted a formal CUP application, and given that the Zoning Commission cannot deny a CUP application, City Code § 150.19(A)(4)(c), it is implausible that the Zoning Commission denied Perry a CUP at its March 17, 2025 meeting, *see Twombly*, 550 U.S. at 570 (explaining that a plaintiff must allege a claim that is "plausible on its face").   The option to apply for a CUP, therefore, remains available to Perry.

Perhaps tacitly conceding that he never submitted a formal CUP application, Perry alternatively alleges that it would have been futile to submit a CUP application because "Defendants had already decided that [Perry's] use would not be considered as a conditional use and had expressly closed both the permitted-use and conditional-use paths."   ECF No. 47 ¶ 56.   Again, this allegation relies on an implausible reading of the Zoning Commission's meeting minutes.   Moreover, while futility can excuse a plaintiff's failure to exhaust state administrative remedies, it is a high bar to clear.   Specifically, Perry must show that the City is "unable to consider whether to grant relief because it lacks institutional competence to resolve the particular type of issue presented" or that the City "lack[s] authority to grant the type of relief requested."   *Raymond*, 847 F.3d at 592 (citation omitted).   Neither of those conditions applies here: the City Council plainly has the institutional competence and authority to adjudicate a CUP application.   *See* City Code § 150.19(A)(4)–(5).   Although Perry is likely correct, as a practical matter, that the City

Council was unlikely to look upon his CUP application with favor, that does not establish "with certainty" that his CUP application would have been denied. *Raymond*, 847 F.3d at 592. Because it is apparent from the pleadings that Perry did not exhaust his state administrative remedies, his procedural due process claim is dismissed. *See Lobrano*, 695 F.3d at 764.

### b.   Equal Protection

Perry next alleges that the City's decision to prohibit cannabis businesses in residential areas violates his equal protection rights under the Fourteenth Amendment. ECF No. 47 ¶¶ 60–67. Unlike his procedural due process claim, Perry's equal protection claim does not require the exhaustion of state administrative remedies. *See Raymond*, 847 F.3d at 589 (explaining that, except for procedural due process claims, "a plaintiff is not required to exhaust state administrative remedies as a prerequisite to bringing an action pursuant to" Section 1983). And although Perry has not violated the Challenged Ordinance, and the City has not enforced the Challenged Ordinance against Perry, Perry may still challenge the Challenged Ordinance if he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder." *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 749 (8th Cir. 2019) (alteration in original) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)).

Perry satisfies this standard: he has proposed operating a cannabis business from his home garage and has even received preliminary approval for that business, but the Challenged Ordinance squarely forbids him from operating that cannabis business. ECF

No. 47 ¶¶ 20–22, 28–46.   There is, therefore, "little doubt that [Perry] will face legal consequences if [he] decide[s] to start" his proposed cannabis business.  *Lucero*, 936 F.3d at 750.   Additionally, land-use regulations are subject to the strictures of the Equal Protection Clause, *see City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 447 (1985), so Perry's intended conduct is "arguably affected with a constitutional interest," *Lucero*, 936 F.3d at 749.   The Court may therefore proceed to the merits of the equal protection claim.

The Equal Protection Clause "requires the government treat all similarly situated people alike." *Creason v. City of Washington*, 435 F.3d 820, 823 (8th Cir. 2006).   As that principle suggests, the "first step" when evaluating an equal protection claim is to decide "whether the plaintiff has demonstrated that [he] was treated differently than others who were similarly situated to [him]." *Adam & Eve Jonesboro, LLC v. Perrin*, 933 F.3d 951, 959 (8th Cir. 2019) (citation omitted).   If a plaintiff clears that "threshold," the next step is to apply the appropriate level of scrutiny to the challenged law.  *Id.*

Defendants and the Court understand Perry to challenge the City's distinction between home-based cannabis businesses (which are prohibited) and home-based non-cannabis businesses (which are permitted).   ECF No. 52 at 20.   Defendants argue that these two types of businesses are not similarly situated.  *Id.* at 20–21.   But even assuming that these two types of businesses are similarly situated, Perry's equal protection claim fails because the Challenged Ordinance satisfies the relevant level of scrutiny.[6]  *See Hosna v.*

---

[6]     The Court observes that Defendants' arguments on the similarly situated analysis merges into their rational-basis analysis.

*Groose*, 80 F.3d 298, 304 (8th Cir. 1996) (assuming without deciding that plaintiffs met their threshold similarly situated showing).

Perry and Defendants agree that rational-basis review applies to Perry's claim. ECF No. 47 ¶ 64; ECF No. 52 at 21. The Court concurs: this case implicates neither "a fundamental right" nor "a suspect or quasi-suspect classification," so rational-basis review applies. *Gallagher v. City of Clayton*, 699 F.3d 1013, 1019 (8th Cir. 2012). Under that standard, a challenged law will be upheld as long as it is "rationally related to a legitimate government interest." *Id.* This standard is particularly deferential to the government, for the challenged law is "accorded a strong presumption of validity," *Heller v. Doe*, 509 U.S. 312, 319 (1993), and will be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification," *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). If the Court can discern some "rational reason" for the classification at this procedural juncture, "further factual development" is unnecessary, and the Court may resolve the equal protection claim on a motion to dismiss. *Knapp v. Hanson*, 183 F.3d 786, 789 (8th Cir. 1999); *see Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004) ("[A] district court may conduct a rational basis review on a motion to dismiss.").

In rejecting Perry's proposed legislation and enacting the Challenged Ordinance, both the Zoning Commission and the City Council identified several concerns with allowing cannabis businesses in residential areas, including increased traffic in residential neighborhoods, "security issues" with growing cannabis near homes, odors, noise, and the general "undesirabil[ity]" of cannabis businesses near residential homes. ECF No. 1-3 at 1–2; ECF No. 53-8 at 2. Each of these justifications provides a rational basis for

18

excluding home-based cannabis businesses from residential areas. *See Borges v. County of Mendocino*, 598 F. Supp. 3d 846, 863 (N.D. Cal. 2022) (holding that concerns about "traffic" and "the residential character of the neighborhoods" provided rational bases for prohibiting cannabis cultivation in a particular area); *Yakima County v. MLM Ent., LLC*, No. 36289-2-III, 2020 WL 1867065, at *5 (Wash. Ct. App. Apr. 14, 2020) (holding that "health and safety risks" of marijuana provided a rational basis to prohibit marijuana land uses); *County of Los Angeles v. Hill*, 192 Cal. App. 4th 861, 871 (Cal. Ct. App. 2011) (finding a rational basis for prohibiting marijuana dispensaries but allowing pharmacies to operate in certain areas because dispensaries are "the target of a disproportionate amount of violent crime" and "attract loitering and marijuana smoking on or near the premises, which negatively affect the 'quality of life' in the neighborhood"); *see also Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 393 (1926) (citation omitted) (observing that "any business establishment is likely to be a genuine nuisance in a neighborhood of residences" because "[p]laces of business are noisy; they are apt to be disturbing at night; some of them are malodorous; some are unsightly; [and] some are apt to breed" pests).

Indeed, as Defendants point out, OCM's regulations require cannabis businesses to comply with heightened security requirements including alarms "capable of being heard by an individual within a 100-foot radius from entrances and exits of the premises," Minn. R. 9810.1500, subp. 8(A), 24-hour exterior video surveillance, *id.*, subp. 9, and exterior lights that allow "cameras to record any activity within a radius of at least 20 feet around all entrances and exits," *id.*, subp. 10. The City could reasonably determine that these intrusive security measures, along with the concerns described above, would undermine

the "residential character of the neighborhood and its desirability." *Ambler Realty*, 272 U.S. at 394.

Perry suggests that the City's concerns are "speculative" and observes that "concerns about safety, security, or nuisance could have been addressed by imposing conditions under the CUP process," as he proposed with his own cannabis business. ECF No. 47 ¶¶ 28, 64; ECF No. 57-2 at 9. But a challenged law may survive rational-basis review even if it is overinclusive in advancing the asserted interest, *see Gallagher*, 699 F.3d at 1019, and even if it is based on "rational speculation unsupported by evidence or empirical data," *Beach Commc'ns*, 508 U.S. at 315. So, just because some cannabis businesses might not pose health, safety, and desirability concerns does not mean that the City was foreclosed from regulating cannabis businesses as a whole. That regulatory line-drawing, to the extent that it is imperfect, does not invalidate the Challenged Ordinance. *See Vance v. Bradley*, 440 U.S. 93, 108 (1979).

Perry's argument also misapprehends the burden he faces on rational-basis review. In this case, the "burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." *Heller*, 509 U.S. at 320–21 (internal citation omitted). In other words, it is not Defendants' burden to prove that the Challenged Ordinance has a rational basis; instead, it is Perry's burden to prove that the Challenged Ordinance does *not* have a rational basis. Other than suggesting that *his* cannabis business would not be a nuisance to a residential area, Perry does not offer any allegations or evidence to negate the health, safety, and desirability concerns of the City Council and Zoning Commission.

20

Ultimately, Perry's claim boils down to a good-faith policy disagreement: Perry thinks it's a good idea to permit cannabis businesses in residential areas, while the City thinks it's a bad idea. The Equal Protection Clause, however, does not care who has "the better policy argument" nor whether the City "has made the best decision." *Let Them Play MN v. Walz*, 517 F. Supp. 3d 870, 883 (D. Minn. 2021). All that matters is that there is a "reasonably conceivable state of facts that could provide a rational basis" for the City's decision. *Beach Commc'ns*, 508 U.S. at 313. Defendants have demonstrated that rational basis, so Perry's equal protection claim must be dismissed.[7] *See Knapp*, 183 F.3d at 789.

### c.     First Amendment Retaliation

Perry alleges that he engaged in First Amendment-protected activity when he petitioned the City Council to amend the City Code to allow cannabis businesses in residential areas and submitted public-records requests to the City, and that Defendants retaliated against him by instead enacting the Challenged Ordinance. ECF No. 47 ¶¶ 69–70. To successfully plead a First Amendment retaliation claim, a plaintiff must allege that:

---

[7]     Perry's equal protection claim could be read to assert two distinct theories: a traditional equal protection challenge to the Challenged Ordinance or a "class-of-one" claim. The "[c]lass of one doctrine focuses on discrimination not between classes or groups of persons, as 'traditional' equal protection doctrine does, but on discrimination against a specific individual." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012). Ultimately, the distinction collapses in this case because Perry alleges that the purported similarly situated group for either theory is the same: operators of home-based non-cannabis businesses. ECF No. 47 ¶¶ 62–63, 65 (comparing Perry's "proposed use" to that of "other Level-2 home occupations that the City allows"). And because the Court has found a rational basis for the City's difference in treatment under traditional equal protection principles, Perry's class-of-one claim similarly fails. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (explaining that a class-of-one claim for differential treatment requires a plaintiff to show "no rational basis for the difference in treatment").

21

(1) he "engaged in protected activity"; (2) the defendant took action against him that was sufficiently serious to "chill a person of ordinary firmness from engaging in that activity"; and (3) the defendant took the adverse action "to retaliate for the protected activity." *Zutz v. Nelson*, 601 F.3d 842, 848–49 (8th Cir. 2010) (citation omitted).

Perry satisfies the first element: petitioning the government for legislative change "lies at the heart of speech protected by the First Amendment." *Williams v. City of Carl Junction*, 480 F.3d 871, 874–75 (8th Cir. 2007). The First Amendment also protects a person's right to make public-records requests. *See, e.g.*, *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019).

Perry's retaliation claim, however, falters at the second and third elements. The second element requires Perry to allege that Defendants took action against him that was sufficiently serious to "chill a person of ordinary firmness from engaging in" protected activity. *Zutz*, 601 F.3d at 849. To that end, Perry alleges that the City retaliated against him by enacting a prohibition on cannabis businesses in residential areas. ECF No. 47 ¶ 70. But the fact that the City did not enact Perry's preferred legislation does not demonstrate sufficiently serious adverse action against Perry—if that were so, then nearly every American who contacts an elected representative of an opposing political party would have a claim for First Amendment retaliation. Courts have reasonably rejected such arguments, lest "the prospect of every loser in a political battle claiming that enactment of legislation it opposed was motivated by hostility toward the loser's speech." *Planned Parenthood of Kan. & Mid-Mo. v. Moser*, 747 F.3d 814, 842 (10th Cir. 2014), *abrogated in part on other grounds by Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015).

22

More tellingly, Perry's exhibits show that after the Zoning Commission declined to adopt his proposed legislation and after the City enacted a prohibition on cannabis businesses in residential areas, Perry continued to speak out against the City and challenge the City's public-records productions. ECF No. 1-3 at 5–6, 11, 13–16, 18. That undermines Perry's claim that Defendants' conduct would "chill a person of ordinary firmness from engaging in" protected activity. *Zutz*, 601 F.3d at 849; *see Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002) (finding city council's and city administrator's "harassing comments" in response to the plaintiff's criticism was "insufficient to deter a person of ordinary firmness from continuing to speak out," and highlighting that the plaintiff "continued to speak out against" the defendants "in the face of the[] comments" on "numerous occasions").

As for the third element of Perry's retaliation claim—causation—Perry suggests that the "chronology of events" raises an inference of retaliation. ECF No. 47 ¶ 71. But temporal proximity, standing alone, is insufficient to plausibly allege a retaliatory motive. *See Poemoceah v. Morton County*, 117 F.4th 1049, 1056 (8th Cir. 2024). The only allegation beyond temporal proximity that Perry provides is a March 27, 2025 email from Moran to Hill recommending that the City "get ahead of dangerous occupations" and consider prohibiting cannabis businesses as a home occupation, particularly because "we have a person of interest in town that may try to do something clever." ECF No. 1-3 at 3–4. It is plausible that the clever "person of interest" referred to in Moran's email is Perry. But to plausibly allege causation, a plaintiff must demonstrate that he "[was] 'singled out'

23

due to [his] protected expression." *Aldridge v. City of St. Louis*, 75 F.4th 895, 899 (8th Cir. 2023) (quoting *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010)).

Moran's email does not plausibly connect Perry's protected expression (proposing legislative changes and submitting public-records requests) to the purported retaliation (adopting a prohibition on cannabis businesses in residential areas). Notably, Moran's email does not mention Perry's legislative advocacy or public-records requests; rather, the email only vaguely references a concern that Perry, presumably, will try to "do something clever." ECF No. 1-3 at 3. If anything, though, Moran's concern that Perry would try to "do something clever" references Perry's desire to cultivate and sell cannabis, *not* his legislative advocacy or public-records requests. Perry does not argue that operating a cannabis business is activity protected by the First Amendment, so he cannot plausibly show that he was "singled out" for exercise of his First Amendment rights. *Aldridge*, 75 F.4th at 899. Perry's attempt to otherwise "infer" retaliatory animus from Moran's vague email "is not a plausible conclusion." *Mitchell v. Kirchmeier*, 28 F.4th 888, 897 (8th Cir. 2022) (citation omitted) (affirming dismissal of First Amendment retaliation claim when allegations of retaliatory animus were implausible considering the "alternative, non-retaliatory explanation" (internal quotation marks omitted)); *see also Iqbal*, 556 U.S. at 678 (citation modified) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."). Accordingly, Perry's First Amendment retaliation claim is dismissed.

24

### d.  MGDPA

Finally, Perry alleges violations of the MGDPA against the City and Hill, arguing that they failed to produce requested public records, improperly invoked attorney-client privilege to withhold public records, and failed to sufficiently explain the basis on which they withheld public records.  ECF No. 47 ¶ 76.  This is a claim arising under Minnesota state law, so if the Court is to consider it, the claim must fall within the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

A district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Barstad v. Murray County*, 420 F.3d 880, 888 (8th Cir. 2005) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

That is appropriate here.  The Court has dismissed all of Perry's federal claims well before trial.  Accordingly, the Court declines to exercise supplemental jurisdiction over the MGDPA claim and dismisses that claim without prejudice, "so that it may be considered, if at all, by the courts of Minnesota."  *Hervey v. County of Koochiching*, 527 F.3d 711, 726 (8th Cir. 2008).

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 50) is **GRANTED**. The amended complaint (ECF No. 47) is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: June 23, 2026                                  *s/Laura M. Provinzino*
                                                      Laura M. Provinzino
                                                      United States District Judge

26