**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

TRAVIS PAUL PERRY,                                    **Case No. 0:25-cv-03352-LMP-LIB**

  Plaintiff,                                          **MEMORANDUM OF LAW IN SUPPORT OF**

                                       **RULE 59(e) MOTION AND MOTION FOR**

v.                                                    **LEAVE TO FILE SECOND AMENDED**

                                       **COMPLAINT**

CITY OF WATERVILLE, MINNESOTA;

WATERVILLE PLANNING AND ZONING

COMMISSION; JASON MORAN, in his

official and individual capacities; and TERESA

HILL, in her official and individual capacities,

  Defendants.

**<u>Introduction</u>**

    This case should be reopened because the dismissal without prejudice rested on an availability

analysis that the Proposed Second Amended Complaint corrects and places squarely before the Court.

Plaintiff does not ask the Court to approve cannabis operations or to act as a zoning board. Plaintiff

also does not ask the Court to treat his January 13, 2025 submission as a completed official CUP

application or to treat the March 17, 2025 Planning and Zoning vote as a formal final CUP

adjudication by the City Council. Plaintiff accepts those formal points.

The narrower Rule 59(e) issue is whether judgment should remain in place when the Court's exhaustion ruling treated the CUP process as still available based on the City Council's general institutional authority to decide CUP applications, even though the same Order recognized that Ordinance 150.02-2025 squarely prohibited the proposed home-garage cannabis business as a home occupation. General authority to decide CUP applications is not the same as authority to grant a CUP for a use that the governing ordinance categorically excludes.

The Proposed Second Amended Complaint pleads the corrected and complete chronology: Plaintiff asked City Hall what process to follow; City officials routed him to Council and Planning and Zoning rather than to the official CUP form, fee, Zoning Administrator, and Section 150.19 process; City officials discussed conditional-use treatment on the record and communicated that residential cannabis would not be allowed; the City then adopted a categorical home-occupation exclusion; and the City later took the position that there was no denial because no formal permit application had been filed. The issue is not probable denial. The issue is that the City-selected path made the specific pre-amendment residential home-occupation/CUP route ineffective before the City later relied on Plaintiff's failure to invoke the formal route he had not been directed to use.

**Procedural Posture**

The Court granted Defendants' motion to dismiss on June 23, 2026. The Order dismissed the Amended Complaint without prejudice and directed entry of judgment. Plaintiff files this motion within Rule 59(e)'s 28-day period and submits the complete proposed amended pleading required by Local Rule 15.1.

The Order contains findings that materially narrow the issues. First, the Court rejected Defendants' argument that OCM's dwelling-related rules necessarily defeated traceability, holding that it was plausible that OCM's dwelling regulations did not prohibit operating in an attached or

detached garage. Second, the Court rejected Defendants' argument that the injury belonged only to Snoeeons Nurturing Buds and Resources LLC, recognizing Plaintiff's direct personal injury from alleged interference with use of his own property. Third, the Court recognized that the Challenged Ordinance squarely prohibited Plaintiff from operating the proposed home cannabis business. Those points are now incorporated into the proposed amended pleading and are not relitigated as standing issues.

The Order dismissed procedural due process because the prior pleading showed no completed official CUP application and because the Planning and Zoning Commission could recommend but not finally decide CUP applications. The Proposed Second Amended Complaint corrects that framing. It alleges not to be a formal CUP denial, but a City-controlled process that made the residential conditional use route objectively unavailable and ineffective before Plaintiff could receive individualized review.

**<u>Governing Legal Standards</u>**

Rule 59(e) allows a motion to alter or amend judgment filed no later than 28 days after entry of judgment. Fed. R. Civ. P. 59(e). Rule 59(e) serves the limited function of correcting manifest errors of law or fact or considering newly discovered evidence. United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006); Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998).

A post-judgment amendment requires the Court first to alter or vacate the judgment and then consider leave to amend. United States v. Mask of Ka-Nefer-Nefer, 752 F.3d 737, 742-43 (8th Cir. 2014). Rule 15(a)(2) provides that leave should be freely given when justice so requires. The ordinary reasons to deny leave are undue delay, bad faith, repeated failure to cure deficiencies, undue

prejudice, or futility. Foman v. Davis, 371 U.S. 178, 182 (1962); Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 715 (8th Cir. 2008).

District of Minnesota Local Rule 15.1 requires the proposed amended pleading to be complete in itself and requires a version showing through redlining, underlining, strikeouts, or a similarly effective typographic method how the proposed pleading differs from the operative pleading. Plaintiff submits both a complete proposed pleading and a comparison/redline.

The Court's exhaustion analysis relied on procedural due process exhaustion principles. Hopkins v. City of Bloomington, 774 F.3d 490, 492 (8th Cir. 2014). Raymond v. Board of Regents recognizes that futility may apply where the decisionmaker is unable to grant the requested relief because it lacks authority to do so. Raymond v. Bd. of Regents of the Univ. of Minn., 847 F.3d 585, 589, 592 (8th Cir. 2017). Plaintiff's corrected theory fits that authority/availability principle because the question is not whether City Council generally can decide CUP applications. The question is whether, after the categorical ordinance exclusion, the City had authority to grant a CUP for Plaintiff's particular cannabis home occupation without first changing the ordinance.

The Complete Chronology Shows a City-Controlled Process, Not a Simple Failure to Apply

Plaintiff did not begin by skipping an obvious procedure. In early January 2025, before submitting written materials, he went to City Hall and asked Administrator-Clerk Teresa Hill what local process he needed to follow. He explained that he was a Stage IV thyroid-cancer survivor, had no thyroid, was a United States Army veteran, qualified for social equity based on veteran status, and was trying to create a lawful way to earn income because ordinary employment was not realistic for him. Hill did not give him a CUP form, identify the Zoning Administrator, mention a fee, request site-plan materials, cite Section 150.19, or tell him to file a formal CUP application. She routed him to the City Council.

Plaintiff then submitted January 13 materials because that was the route the City gave him. Exs. 0020-0021. Those materials were a request for a lawful path and an explanation of the microbusiness concept. The City then treated the matter as a Council and ordinance/amendment issue, not a formal CUP application. The February 4 agenda listed the item as a home-based cannabis microbusiness amendment request. Ex. 0025.

The January 22 Moran email matters because before the public process was complete, the City Attorney was already discussing concerns including odor, crime, delivery, manufacturing, precedent, and tightening the home-occupation ordinance. Ex. 0023. This supports the inference that Plaintiff was not being neutrally directed to Section 150.19. Officials were considering changing the ordinance in response to his specific request.

The February 19 Planning and Zoning process did not cure the problem. The matter remained framed as a home-based cannabis/zoning issue. Exs. 0032-0033. Plaintiff still was not given a CUP form, fee, Zoning Administrator, or Section 150.19 instructions. The matter was tabled so the City Attorney could attend a later meeting.

The March 17 transcript is the core record evidence. Moran described the request as one to amend zoning ordinances to allow cannabis manufacture, retail sale, and cultivation in residential zones. Ex. 0069 lines 24-35. Moran stated that the City allowed cannabis/THC products in industrial zones and that 'we don't allow it in a residential.' Id. lines 50-58. Plaintiff explained that he did not want people coming to his house for purchases and that the plan was garage-based. Id. lines 73-88. A Commission member acknowledged Plaintiff might run the cleanest and best operation but worried about future applicants. Id. lines 103-108. Plaintiff tried to narrow the discussion to cultivation and seed production. Id. lines 114-126. When Plaintiff asked about making the use a conditional use, Moran answered in substance that the City legally could, but argued it should not. Id. lines 169-179.

The meeting then ended with language that the use would not be allowed as a conditional use permit. Id. lines 183-199.

Plaintiff does not ask the Court to call March 17 a formal final CUP adjudication. Plaintiff alleges that a reasonable person in his position, after being routed by City officials to the Council and Commission process, would understand that the residential conditional-use route was closed as a practical and objective matter.

The March 27 email and Ordinance 150.02-2025 then made the problem concrete. Moran sent Hill a proposed home-occupation amendment, referenced dangerous occupations, referred to the State approaching THC licensing, and identified a 'person of interest in town' who might 'try to do something clever.' Ex. 0041. To Plaintiff's knowledge, he was the only person actively seeking a licensed cannabis business in Waterville. The proposed amendment became the categorical home occupation exclusion. Exs. 0042, 0048.

The May-June City letters completed the procedural trap. On April 30, Plaintiff sent a data request and a reconsideration letter. Exs. 0043, 0046. On May 7, Hill responded that Plaintiff had not put in an application for any zoning permits and therefore there was no denial of any permits. Ex. 0047. On May 15, Hill stated the City would take no further action and directed Plaintiff to other zones. Ex. 0055. On June 5, Moran stated that the City Council met regarding Plaintiff's litigation notice, returned to open session, unanimously voted to take no action, and again directed Plaintiff to zones where the business could lawfully operate. Ex. 0057. None of those letters told Plaintiff that the residential CUP path remained available. None provided the formal CUP process that Defendants later invoked.

**Rule 59(e) Relief Is Warranted Because the Judgment Rests on an Incomplete Availability Analysis**

The dismissal order correctly held that Plaintiff did not file a completed official CUP application and that Planning and Zoning was not the final CUP decisionmaker. Plaintiff accepts those points. The manifest-error issue is narrower: after the City adopted the categorical home occupation exclusion, the Order treated the option to apply for a CUP as still available because the City Council generally has institutional competence and authority to decide CUP applications.

That analysis does not account for the difference between general institutional authority and effective authority to grant this particular relief. A council may generally decide CUP applications, but it cannot grant a CUP for a use that the ordinance itself categorically excludes unless the ordinance is first changed. The Challenged Ordinance says no home occupation may include cannabis growing, packaging, wholesale, retail sale, cannabis flower, cannabis concentrate, cannabis products, or cannabinoid products as defined in Chapter 342. Once that ordinance was enacted, Plaintiff could not obtain individualized CUP review for the proposed home-garage cannabis microbusiness as a home occupation without first undoing the categorical exclusion.

This is not a mere prediction that the City would deny an application. It is an authority and availability problem. The City may have general competence over CUPs, but the specific relief Plaintiff needed - individualized residential home-occupation review for cannabis growing/related activity - was removed by ordinance. Raymond recognizes that futility is different when the decisionmaker lacks authority to grant the type of relief requested. 847 F.3d at 592.

The Proposed Second Amended Complaint avoids the pleading defects that drove dismissal. It no longer alleges that January 13 was a completed official CUP application. It no longer alleges that March 17 was a formal final CUP adjudication. It pleads instead that Defendants created a City

controlled process, did not provide the formal route, communicated that residential conditional-use treatment would not be allowed, enacted the categorical exclusion, and then used the missing formal application as a defense. Those allegations plausibly explain why the administrative remedy was not actually available in any meaningful sense.

## Leave to Amend Should Be Granted After Reopening

If judgment is altered or amended, leave to amend should be granted under Rule 15(a)(2). The proposed amendment is not offered in bad faith. It does not introduce a new dispute. It corrects the same Waterville chronology and addresses the precise defects identified in the dismissal order. The dismissal was without prejudice, discovery has not begun, no trial date exists, and Defendants will have a full opportunity to respond under Rule 12 or other procedures.

The proposed amendment also preserves the Court's prior favorable standing rulings. It clarifies that Plaintiff is not representing Snoeeons Nurturing Buds and Resources LLC as a separate plaintiff, but is asserting personal injuries tied to property use, process, veteran/social-equity qualification, the personal licensing opportunity, and economic consequences flowing from the alleged deprivation of his own rights. It clarifies that OCM preliminary approval was not a license and did not authorize operations, while OCM communications placed local zoning compliance in the hands of the local government.

## Procedural Due Process Is Plausibly Pleaded in the Proposed Complaint

Plaintiff's core due process claim is not that he had a guaranteed right to approval. It is that the City deprived him of meaningful access to an existing pre-amendment land-use process before changing the rules and then relying on the lack of the formal application route that City officials never directed him to use. Minnesota law recognizes conditional use procedures, and local criteria can create a protected claim of entitlement where approval depends on standards rather than pure

discretion. Plaintiff alleges that before the amendment, Level 2 home occupations in R-2 could be considered through the CUP process and that cannabis growing was not yet categorically excluded from the home-occupation definition.

The proposed pleading also alleges deprivation without adequate process. Plaintiff was routed to Council, then Planning and Zoning, then told no application or denial existed after the City adopted a categorical exclusion. He was not given the official CUP form, fee, Zoning Administrator instructions, or Section 150.19 instructions. The proposed complaint therefore pleads more than subjective disappointment; it pleads a procedural trap created by official routing and later defended by a formalism the City itself had not provided.

## The Remaining Federal Claims Are Preserved for Review

Procedural due process remains the central claim. Plaintiff also preserves equal protection/class of-one and First Amendment retaliation theories. Plaintiff recognizes that rational-basis review is deferential. The proposed complaint nevertheless preserves the allegation that Plaintiff was the only known cannabis home-occupation applicant, that the City responded to his request by grouping cannabis with explosives and firearms, and that the challenged ordinance was adopted in direct response to his request and protected petitioning. Plaintiff also preserves the retaliation theory based on petitioning, data requests, reconsideration efforts, and litigation notice. These claims are preserved so the Court can address them under the corrected factual record and so the appellate record is complete.

## The MGDPA Claim Should Be Reinstated if Federal Claims Are Reopened

The Court declined supplemental jurisdiction over the MGDPA claim only after dismissing all federal claims. If the Court reopens the federal claims, supplemental jurisdiction again exists because the data-practices chronology arises from the same case or controversy. The proposed complaint

pleads the April 30 data request, the May 7 response invoking lack of application/denial and Section 13.393 withholding, Plaintiff's May 9 clarification/challenge, the May 15 no-further-action response, the May 23 follow-up, and the June 5 City Attorney letter. The MGDPA claim should therefore be reinstated with the federal claims or, at minimum, preserved without prejudice.

**<u>Conclusion</u>**

Plaintiff respectfully requests that the Court alter or amend the judgment, reopen the case, grant leave to file the Proposed Second Amended Complaint, accept the Local Rule 15.1 redline/comparison, and permit Defendants to respond under the Federal Rules. In the alternative, Plaintiff requests any narrower relief necessary to preserve the claims and create a clear record for review.

Dated: July 21, 2026

Respectfully submitted,

/s/ Travis Paul Perry

Travis Paul Perry

529 N. Mallory Street

Waterville, MN 56096

Email: mn.snoeeons@gmail.com

Phone: 507-210-0446

Pro Se Plaintiff