**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

TRAVIS PAUL PERRY,                          **Case No. 0:25-cv-03352-LMP-LIB**

  Plaintiff,                                **PROPOSED SECOND AMENDED COMPLAINT**

v.                                          **REQUEST FOR BENCH TRIAL**

CITY OF WATERVILLE, MINNESOTA;

WATERVILLE PLANNING AND ZONING

COMMISSION; JASON MORAN, in his

official and individual capacities; and TERESA

HILL, in her official and individual capacities,

Defendants.

　　Plaintiff Travis Paul Perry requests a bench trial and pleads as follows:

## I. Nature of the Action

1. This is a civil-rights action under 42 U.S.C. § 1983 and Minnesota law arising from Defendants' handling of Plaintiff Travis Paul Perry's proposed veteran social-equity cannabis microbusiness at his residential property in Waterville, Minnesota.

2. Procedural due process is the core of this case. Plaintiff does not allege that he was automatically entitled to approval, does not ask this Court to approve cannabis operations at his property, and does not ask this Court to function as a zoning board. Plaintiff alleges that Defendants deprived

him of a meaningful opportunity to use the City's pre-amendment land-use process before the City adopted a categorical home-occupation exclusion and then relied on the absence of the formal application route Defendants never directed Plaintiff to use.

3. Plaintiff does not allege that his January 13, 2025 written materials were a completed formal CUP application. Plaintiff does not allege that the March 17, 2025 Planning and Zoning vote was a formal final CUP adjudication by the City Council. Plaintiff alleges that the City's own officials selected and controlled a different route, objectively communicated that the residential conditional-use path would not be allowed, adopted an ordinance squarely prohibiting the proposed use, and then took the position that no denial existed because no formal zoning-permit application had been filed.

4. The same connected course of conduct also supports Plaintiff's equal protection/class-of-one claim, First Amendment retaliation claim, alternative substantive due process claim, and Minnesota Government Data Practices Act claim.

## II. Jurisdiction and Venue

5. This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343 because the claims arise under the United States Constitution and 42 U.S.C. § 1983.

6. This Court has supplemental jurisdiction over the Minnesota Government Data Practices Act claim under 28 U.S.C. § 1367 because it arises from the same case or controversy.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in Minnesota and the events giving rise to the claims occurred in Waterville, Minnesota.

### III.  Parties and Capacities

8.  Plaintiff Travis Paul Perry is a natural person domiciled in Minnesota. Plaintiff is a United States Army veteran, a Stage IV thyroid-cancer survivor, and a Minnesota cannabis social-equity applicant based on his veteran status.

9.  Plaintiff resides at and co-owns the property at 529 N. Mallory Street, Waterville, Minnesota. Plaintiff's father is also a co-owner of the property and supported the proposed use.

10. Plaintiff formed Snoeeons Nurturing Buds and Resources LLC in connection with the state cannabis licensing process. Plaintiff is the sole member, 100% owner, and sole decision-maker of Snoeeons Nurturing Buds and Resources LLC. Plaintiff does not seek to represent Snoeeons Nurturing Buds and Resources LLC as a separate plaintiff. Plaintiff asserts his own personal constitutional and statutory injuries, including injury to property-use rights, process rights, veteran/social-equity opportunity, business-launch opportunity, and economic injuries flowing from violation of his personal rights.

11. Defendant City of Waterville, Minnesota is a Minnesota municipal corporation responsible for the ordinances, policies, actions, decisions, and ratifications challenged in this action.

12. Defendant Waterville Planning and Zoning Commission is named because it participated in the City-selected process and March 17 vote. To the extent the Commission is not a separate suable entity, Plaintiff pleads its conduct as conduct of the City of Waterville.

13. Defendant Jason Moran was at all relevant times the City Attorney for Waterville. He is sued in his individual capacity for damages and in his official capacity for declaratory and other lawful relief.

14. Defendant Teresa Hill was at all relevant times the City Administrator-Clerk for Waterville. She is sued in her individual capacity for damages and in her official capacity for declaratory and other lawful relief.

## IV. Exhibits, Incorporation, and Construction

15. The documents and exhibits submitted with this filing and identified by Plaintiff's Master Exhibit numbers are incorporated by reference under Federal Rule of Civil Procedure 10(c) to the extent they are attached to or submitted with this Proposed Second Amended Complaint and specifically cited or relied upon in this pleading. Plaintiff uses Master Exhibit numbers to preserve consistency with the existing record, prior docketed exhibits, and Plaintiff's exhibit files.

16. If a characterization in this pleading conflicts with an attached or incorporated exhibit, the exhibit controls. Plaintiff pleads facts based on the exhibits, his personal knowledge, and reasonable inferences from the City-produced record.

17. Plaintiff relies particularly on Master Exhibits 0020 through 0023, 0025 through 0037, 0039 through 0042, 0043 through 0057, 0069, and 0071 for the Rule 59(e) motion and this proposed pleading.

18. Plaintiff also preserves damages, business-planning, medical impact, court-access, and later proof categories that may be addressed through discovery, expert proof, dispositive motions, or trial. The Rule 59(e) filing focuses on the City process, OCM/local-zoning communications, ordinance change, City letters, and March 17 transcript because those are the materials most directly tied to reopening and pleading sufficiency.

## V. Plaintiff's Background, Property, Business Planning, and OCM Process

19. Plaintiff is a veteran social-equity applicant under Minnesota's cannabis program. His veteran status was personal to him and was the reason for his social-equity qualification.

20. Plaintiff began planning the cannabis microbusiness and related charitable mission around 2022 after surviving Stage IV thyroid cancer and entering remission. The business was intended to provide Plaintiff a way to earn income despite serious disabilities and to eventually support a charitable foundation for disabled veterans, cancer survivors, and others with serious medical conditions.

21. Plaintiff cannot maintain ordinary employment because of serious health conditions, including the effects of cancer treatment, absence of a thyroid after total thyroidectomy, chronic pain, and stress-related non-epileptic seizures. The proposed business was therefore personally important and not merely speculative or recreational.

22. Plaintiff's Year-One plan was to start in the attached garage at his residential property. The purpose of the home-garage launch was to generate revenue, build an operating history, establish proof of concept, and later pursue financing or expansion into a commercial or industrial location.

23. Plaintiff planned Year-One cultivation and seed production. If allowed, Plaintiff also planned limited non-solvent processing such as cannabis butter and heat-press/rosin processes. Plaintiff did not plan butane, $CO_2$, ethanol, or solvent extraction at the home.

24. Plaintiff did not plan retail traffic or customer purchases at the home. Plaintiff intended wholesale sales or lawful online and dispensary sales channels and told the City he did not want people coming to his house for purchases.

25. Plaintiff planned odor controls, carbon filters, security measures, locks, doors, compliance measures, inspections, and reasonable conditions. Plaintiff also planned organic cultivation

methods, including organic inputs, soil blends, worm composting/worm castings, and no synthetic chemical pesticide use.

26. Plaintiff's planned business was personally tied to Plaintiff's own labor, property, background, and specialized practical skills. Plaintiff has been an organic gardener for more than twenty years and has experience with soil creation, organic nutrients, plant cultivation, seed creation, plant breeding, construction, concrete work, metal work, welding, horticulture, agriculture, soil science, mycology, watering systems, lighting, filtration, and facility buildout.

27. Plaintiff also previously worked professionally in mold remediation, including work involving mold, water damage, dampness, moisture, fire damage, and related environmental issues. Those skills were directly relevant to Plaintiff's planned Year-One garage launch because cannabis cultivation required moisture control, mold prevention, air quality, filtration, sanitation, water management, and environmental controls.

28. Plaintiff's Year-One residential garage plan was limited to cultivation, seed production, genetics development, clones, and simple non-solvent processing such as heat-press/rosin processes and cannabis butter. Plaintiff did not plan chemical or solvent extraction at the residential garage. Plaintiff intended to expand into broader lawful cannabis products only after generating operating history and relocating to a properly zoned commercial or industrial location.

29. Plaintiff had personally bred or developed approximately four strains and intended to sell or use seeds, clones, and genetics from strains he created. The loss of the Year-One launch path therefore affected not only flower revenue, but also genetics, seeds, clones, later expansion, and related business-opportunity categories to be proven later.

30. Plaintiff understood OCM would not allow cannabis business activities in a dwelling or access to the business area by passing through a dwelling. Plaintiff intended to remove, wall off, seal, or

otherwise separate the interior door/access between the dwelling and attached garage as needed so the business area could be accessed without passing through a dwelling.

31. OCM communications confirmed that local zoning was a local-government issue and that applicants needed to work with local governments to determine zoning requirements. Ex. 0071.

32. OCM preliminary approval did not authorize operations. It meant Plaintiff still needed final plans, local zoning compliance, inspection, final license steps, and OCM approval. Exs. 0045, 0071.

## VI.  Pre-Amendment City Zoning Framework and Why the Lost Process Mattered

33. Plaintiff's property is in a residential zoning district, identified by the City and Court as R-2, and is also within a shoreline/flood-fringe context.

34. Before the ordinance amendment challenged in this case, the City's zoning code recognized home occupations and distinguished between Level 1 and Level 2 home occupations.

35. Level 2 home occupations were higher-intensity home occupations and could be considered through a conditional use permit in the R-2 district under the City's code.

36. The pre-amendment home-occupation framework did not expressly and categorically exclude cannabis growing/cultivation from all home occupations. The later ordinance amendment added a categorical exclusion for cannabis-related growing and related activities.

37. The City separately allowed cannabis or cannabinoid manufacturing and retail-related uses in certain commercial or industrial districts, in some circumstances as permitted uses and in others as conditional uses. The existence of industrial options did not answer whether Plaintiff had a meaningful opportunity to pursue a Year-One home-garage launch under the pre-amendment home-occupation framework.

38. The pre-amendment process mattered because Plaintiff's only realistic Year-One launch path was his own property. Plaintiff did not have the money, operating history, or health capacity to begin by leasing or buying a commercial or industrial location. The Year-One home launch was intended to create the revenue history needed for later expansion.

39. Plaintiff does not claim the City was required to approve every possible cannabis use in every zone. Plaintiff claims that before the City changed the home-occupation definition, he was entitled to meaningful notice and an opportunity to use the local process the City later said he should have used.

**VII.  City Hall Gatekeeping and January-February 2025 Routing**

40. In early January 2025, before submitting written materials, Plaintiff went to old City Hall and asked Hill what local process he needed to follow to start the business lawfully.

41. Plaintiff told Hill he was a Stage IV thyroid-cancer survivor, had no thyroid after thyroidectomy, was a United States Army veteran, qualified for social equity based on veteran status, and was trying to build a lawful business because ordinary employment was not realistic for him.

42. Hill did not give Plaintiff a CUP form, did not identify a Zoning Administrator, did not mention a fee, did not request a site map or written/graphic materials, did not cite Section 150.19, and did not tell Plaintiff to file a formal CUP application.

43. Instead, Hill routed Plaintiff to the City Council. Plaintiff relied on that instruction from the City's Administrator-Clerk.

44. On or about January 13, 2025, Plaintiff submitted written materials to the City because Hill had routed him to the Council. Exs. 0020-0021. Those materials requested consideration of a home-based cannabis microbusiness and a lawful zoning path.

45. On January 21 or 22, 2025, City communications confirmed the matter was being placed on the City Council agenda. Ex. 0022.

46. On January 22, 2025, Moran sent an email discussing Council-first handling and concerns including odor, crime, delivery, manufacturing, precedent, and tightening the home-occupation ordinance. Ex. 0023.

47. The January 22 email shows that before the public process had concluded, the City Attorney was already considering tightening the ordinance in response to Plaintiff's request.

48. On February 4, 2025, the City Council agenda identified the item as 'Home-Based Cannabis Micro Business Amendment Request-Travis Perry.' Ex. 0025.

49. Plaintiff appeared at the February 4 meeting and tried to explain his proposal and personal reasons for seeking a lawful home-based startup path. Exs. 0026-0030.

50. After February 4, the City did not provide a CUP form or direct Plaintiff into a formal CUP application. Instead, the matter continued through the City's selected Council/Planning-and Zoning route.

51. On February 13, 2025, Hill confirmed the Planning Commission would discuss the requested ordinance amendment on February 19. Ex. 0031.

52. On February 19, 2025, Planning and Zoning discussed the request. The minutes and materials show the matter remained framed as a home-cannabis/zoning amendment issue rather than a formal CUP application. Exs. 0032-0033.

53. During or around the February 19 process, Hill stated in substance that the matter was being treated as a permitted-use/home-occupation issue and that either way an amendment would be needed. The matter was tabled so Moran could attend a later meeting.

**VIII.    March 17, 2025 Meeting, Conditional-Use Language, and Practical Closure of the Residential Path**

54. Before March 17, Hill and Moran exchanged communications about the upcoming meeting and the 'marijuana micro business' issue. Exs. 0034-0038.

55. On March 17, 2025, Planning and Zoning held a meeting concerning Plaintiff's request. The official minutes are Exhibits 0039 and 0040. The corrected transcript prepared from City produced audio is Exhibit 0069.

56. Moran began by describing the request as one to allow cannabis manufacture and retail sale in residential zones, and Plaintiff clarified cultivation plus butter/heat press. Ex. 0069, lines 24-35.

57. Moran discussed existing zones and City concerns including odor, noise, traffic, waste, security, break-ins, and attractive nuisance concerns. Ex. 0069, lines 50-58, 73-88.

58. Plaintiff explained that he did not want people coming to his house for purchases and that sales would be online, per harvest, through dispensaries, or other lawful licensed channels. Ex. 0069, lines 73-88.

59. A Commission member acknowledged Plaintiff might run the cleanest and best possible operation but worried about future applicants. Ex. 0069, lines 103-108.

60. Plaintiff tried to focus the discussion on cultivation as the main Year-One issue. Ex. 0069, lines 114-126.

61. Moran explained that if the City made a use conditional, it could impose conditions, hold hearings, make findings, revoke for violations, and create an appeal path. Ex. 0069, lines 142154.

62. Plaintiff asked whether the City could change the matter to a conditional use. Moran responded in substance that legally there was a way, but he argued against doing so. Ex. 0069, lines 169-179.

63. The meeting ended with a motion and vote using language that Plaintiff understood as denying the zoning change and not allowing the use as a conditional use permit. Ex. 0069, lines 183-199.

64. Plaintiff does not plead that March 17 was a formal final CUP adjudication by the City Council. Plaintiff pleads that the City-selected process objectively communicated that the residential conditional-use path would not be allowed before Plaintiff had ever been given the formal CUP process.

65. After March 17, no City official told Plaintiff that a formal CUP application remained available for the proposed residential cannabis microbusiness. No City official gave Plaintiff a CUP form, identified a fee, identified the Zoning Administrator, requested site-plan materials, or told Plaintiff to file under Section 150.19.

**IX.** **March 27 Amendment Email, Ordinance 150.02-2025, and Categorical Exclusion**

66. On March 27, 2025, Moran sent Hill an email titled 'Possible Amendment to Home Occupation Ordinance.' Ex. 0041.

67. In that email, Moran suggested amending the home-occupation definition to exclude certain trades, stated he wanted to get ahead of dangerous occupations, referenced the State getting closer to issuing THC licenses, and referred to a 'person of interest in town' who might 'try to do something clever.' Ex. 0041.

68. To Plaintiff's knowledge, Plaintiff was the only person actively seeking to establish a licensed cannabis business in Waterville at that time and the only person who fit Moran's description.

69. The proposed amendment attached to the March 27 email is Exhibit 0042.

70. The City later adopted Ordinance 150.02-2025. Ex. 0048.

71. Ordinance 150.02-2025 amended the home-occupation definition to exclude manufacturing, assembly, growing, packaging for sale, retail sale, and related activity for cannabis products, cannabis concentrate, cannabis flower, and other cannabinoids, among other listed activities. Ex. 0048.

72. The ordinance targeted the category of activity Plaintiff had asked to pursue from his home. It eliminated the pre-amendment home-occupation path for the proposed Year-One residential garage launch.

73. As amended, Ordinance 150.02-2025 squarely prohibited Plaintiff's proposed home-garage cannabis microbusiness by excluding cannabis growing, packaging for sale, retail sale, and related cannabis/cannabinoid activities from the home-occupation definition. That categorical exclusion made a later formal residential CUP application ineffective or unavailable for this specific proposed use.

**X.  OCM Preliminary Approval and Local Zoning Gatekeeping**

74. OCM communications before and after the City process confirmed that Plaintiff was a qualified or continuing social-equity applicant but could not operate until completing additional steps. Ex. 0071.

75. OCM informed Plaintiff that OCM verifies local zoning compliance as part of licensing but does not dictate local zoning requirements; applicants must contact the local unit of government to determine zoning requirements. Ex. 0071.

76. On April 24, 2025, OCM issued preliminary license approval for Plaintiff's microbusiness application. Exs. 0045, 0071.

77. The preliminary approval required Plaintiff to continue through local-government zoning compliance, final plans, inspections, payment of fees, and issuance of a final license before operations.

78. The City's local zoning position therefore mattered directly. OCM could not cure the City's categorical exclusion or the City's refusal to provide a meaningful local process.

**XI.  Data Requests, Reconsideration, Formal Complaint, and Final City Position**

79. On April 30, 2025, Plaintiff submitted a public data request seeking communications and records relating to cannabis, hemp, home-based businesses, zoning ordinances, and Plaintiff's request. Ex. 0043.

80. On April 30, 2025, Plaintiff also submitted a reconsideration letter asking the City to reconsider and explaining that he was willing to comply with reasonable conditions, inspections, and regulations. Ex. 0046.

81. On or before April 30, when Plaintiff personally delivered the data request, Plaintiff spoke with Hill in her back office. Plaintiff asked whether the amendment meant the City would allow the business in town. Hill stated in substance that 'we' were not going to allow that business in residential.

82. Hill also suggested Plaintiff could work for the large cannabis company opening in Le Sueur at the old Green Giant factory. Plaintiff rejected that idea because he was trying to build his own social-equity microbusiness, not work for large corporate cannabis.

83. On May 7, 2025, Hill responded to the data request. Ex. 0047.

84. Hill's May 7 letter stated that Plaintiff had not put in an application for any zoning permits and that therefore there was no denial of any permits. Ex. 0047.

85. Hill's May 7 letter also stated that attorney-client communications would not be disclosed under Minnesota Statutes Section 13.393. Ex. 0047.

86. The May 7 letter is central to the procedural due process claim. After routing Plaintiff through Council and Planning and Zoning, after conditional-use language was used on March 17, and after the City moved toward and adopted a categorical exclusion, the City asserted there was no denial because Plaintiff had not filed the formal application nobody had directed him to file.

87. On May 9, 2025, Plaintiff sent a clarification and MGDPA challenge letter. Ex. 0049.

88. On May 12, 2025, the City produced additional material and stated it would not make a practice of disclosing attorney-client data. Ex. 0050.

89. On May 13, 2025, Plaintiff submitted a formal complaint to the City. Exs. 0051-0054.

90. The May 13 complaint raised Plaintiff's concerns about due process, equal treatment, retaliation, data practices, the 'person of interest' email, and damages. Exs. 0051-0054.

91. On May 15, 2025, Hill wrote that the City had reviewed Plaintiff's letter, that the City would take no further action, and that Plaintiff was free to pursue his business in other zones within Waterville if he met state and local regulations. Ex. 0055.

92. On May 23, 2025, Plaintiff sent a notice of intent to file a federal lawsuit. Ex. 0056.

93. On June 5, 2025, Moran wrote that the City Council met in closed session to discuss Plaintiff's litigation threat, returned to open session, and unanimously voted that the City would take no action on the May 23 letter. Ex. 0057.

94. The June 5 letter stated that the City had zones available where Plaintiff's proposed business could lawfully operate and that Plaintiff was free to pursue his business in a zone where it was lawfully permissible. Ex. 0057.

95. The June 5 letter did not tell Plaintiff that a residential CUP application remained available. It did not provide a CUP form. It did not mention Section 150.19. It directed Plaintiff to other zones and stated the City would take no action.

## XII.  Injury, Standing, and Damages

96.  Plaintiff preserves the argument that damages flow from personal constitutional violations even when the economic opportunity involved a single-member entity. Plaintiff does not ask to represent Snoeeons Nurturing Buds and Resources LLC as a separate plaintiff; he seeks damages for personal injuries, including economic losses caused by alleged deprivation of his own property-use rights, process rights, veteran/social-equity opportunity, and business-launch opportunity.

97.  Defendants' actions stopped Plaintiff's proposed business from opening or operating for even one day from his residential property.

98.  The loss of the Year-One residential launch path caused Plaintiff to lose the opportunity to generate first-year revenue, build operating history, pursue future financing, expand later, and fund his planned charitable mission.

99.  Plaintiff seeks damages to be proven at trial, including loss of meaningful process, loss of personal property-use opportunity, loss of first-mover and social-equity opportunity, loss of business-launch opportunity, lost first-year revenue opportunity, lost operating history, lost financing and expansion opportunity, lost genetics/seed/clone opportunity, lost revenue and economic opportunity flowing from Defendants' alleged violation of Plaintiff's personal constitutional rights, medical and emotional harm, reputational harm, delay or loss of ability to fund Plaintiff's planned charitable foundation, nominal damages, costs, and all other relief allowed by law.

100. Plaintiff does not seek to represent Snoeeons Nurturing Buds and Resources LLC as a separate plaintiff. Plaintiff seeks damages for his own personal injuries, including injuries tied to his property interest, veteran/social-equity qualification, personal licensing opportunity, and the business opportunity that Defendants' actions allegedly prevented from ever launching.

101. The City process caused severe stress and worsened Plaintiff's medical symptoms, including stress-related seizure problems. Plaintiff's continued petitioning does not mean Defendants' conduct was harmless; Plaintiff continued because the business and property opportunity were critically important to him.

## XIII.  Municipal Liability

102. The City is liable under Section 1983 because the alleged violations were caused by official municipal policy, final policymaker action, and ratification, not merely by respondeat superior. 103. The ordinance amendment itself was official City policy enacted by the City's governing body.

104. The Council's June 5 no-action vote after closed-session discussion of Plaintiff's litigation notice was final policymaker action or ratification of the City's position.

105. Hill and Moran acted under color of state law and within their City roles when routing Plaintiff's request, communicating City positions, advising on zoning, handling data responses, preparing or transmitting ordinance materials, and communicating the final City response.

106. The Planning and Zoning Commission functioned as part of the City's official land-use process. To the extent it is not separately suable, its actions are pleaded as actions of the City.

## COUNT I - 42 U.S.C. § 1983 - Procedural Due Process

107. Plaintiff incorporates all preceding paragraphs.

108. Plaintiff had protected interests including his personal property-use opportunity, his ability to invoke the pre-amendment local land-use framework, his veteran/social-equity licensing

opportunity, and his opportunity to seek a lawful home-occupation/CUP review before the City categorically excluded the proposed use.

109. Defendants, acting under color of state law, deprived Plaintiff of meaningful process by selecting and controlling a non-CUP route, failing to provide the formal CUP route despite Plaintiff asking City Hall what process to follow, objectively communicating that residential conditional-use treatment would not be allowed, adopting a categorical exclusion, and later asserting no denial occurred because no formal zoning application had been filed.

110. The process provided was constitutionally inadequate because Plaintiff was never given clear notice of the formal procedure the City later claimed he was required to use, never given a meaningful pre-amendment opportunity for individualized review under the Level 2 home occupation/CUP framework, and was later directed to other zones after the City had adopted an exclusion for the proposed home use.

111. Plaintiff does not claim that the Constitution required the City to approve the business. Plaintiff claims the Constitution required a meaningful and fair process before the City deprived him of the pre-amendment opportunity and then used the lack of a formal application as a defense.

112. Defendants' conduct caused Plaintiff damages, including but not limited to the damages described above.

**COUNT II - 42 U.S.C. § 1983 - Equal Protection / Class-of-One**

113. Plaintiff incorporates all preceding paragraphs.

114. Plaintiff was, to his knowledge, the only person actively seeking to establish a licensed cannabis business in Waterville at the relevant time and the only person who fit Moran's 'person of interest' description.

115. Defendants intentionally treated Plaintiff differently from ordinary home-occupation and land use applicants by responding to his specific request with generalized fear-based and stigma based treatment, dangerous-occupation comparisons, a targeted home-occupation amendment, and no individualized review under the existing pre-amendment framework.

116. Defendants lacked a rational basis for singling Plaintiff out for categorical treatment without individualized consideration of his actual proposed restrictions, including no walk-in retail customers, no solvent extraction, odor/security controls, organic methods, inspections, and willingness to accept reasonable conditions.

117. In the alternative, even if cannabis-related zoning can be regulated generally, Defendants' targeted treatment of Plaintiff and his specific request was arbitrary and irrational as applied.

118. Defendants' conduct caused Plaintiff damages.

**COUNT III - 42 U.S.C. § 1983 - First Amendment Retaliation / Petition Clause**

119. Plaintiff incorporates all preceding paragraphs.

120. Plaintiff engaged in protected First Amendment activity by petitioning City officials, submitting written requests, speaking at public meetings, requesting reconsideration, submitting public data requests, challenging the City's data response, filing a formal complaint, and sending a notice of intent to sue.

121. Defendants took adverse action that would chill a person of ordinary firmness from continuing to petition, including using municipal power to adopt a targeted categorical exclusion, referring to a 'person of interest' who might 'try to do something clever,' refusing further action, and directing Plaintiff away from the residential property path after he petitioned.

122. Plaintiff continued to petition because of the importance of the business, his property, and his unusual persistence. His continued petitioning does not defeat the claim because the ordinary firmness inquiry is objective.

123. The timing and content of the City's actions support a plausible inference of retaliatory motive. Plaintiff petitioned for a home cannabis business path; City officials expressed concern and discussed tightening the ordinance; after Plaintiff's public participation, Moran circulated the 'person of interest' amendment email; the City enacted the exclusion; and after Plaintiff's formal complaint and notice of intent to sue, the City voted to take no action.

124. Defendants' retaliation caused Plaintiff damages.

**COUNT IV - 42 U.S.C. § 1983 - Alternative Substantive Due Process**

125. Plaintiff incorporates all preceding paragraphs.

126. Plaintiff pleads substantive due process in the alternative to procedural due process.

127. Defendants' conduct was arbitrary, targeted, and conscience-shocking in the land-use context because officials used generalized fear and stigma, compared Plaintiff's proposed organic/no customer/no-solvent home-garage cultivation plan to dangerous trades, failed to provide individualized review, and adopted a categorical exclusion in response to the only known applicant.

128. Plaintiff does not claim that every incorrect zoning decision is a constitutional violation. Plaintiff claims this specific City-controlled sequence was arbitrary and oppressive enough to violate substantive due process if the Court determines the wrong is not fully addressed as procedural due process.

129. Defendants' conduct caused Plaintiff damages.

**COUNT V - Minnesota Government Data Practices Act**

130. Plaintiff incorporates all preceding paragraphs.

131. On April 30, 2025, Plaintiff submitted a public data request seeking City communications and records relating to cannabis, hemp, home-based business, zoning ordinances, and Plaintiff's request. Ex. 0043.

132. On May 7, 2025, Hill responded by producing some materials but withholding attorney communications under Minnesota Statutes Section 13.393 and stating no permit denial existed because Plaintiff had not filed an application for zoning permits. Ex. 0047.

133. On May 9, 2025, Plaintiff challenged and clarified the data response. Ex. 0049.

134. On May 12, 2025, the City produced additional material while stating it would not make a practice of disclosing attorney-client data. Ex. 0050.

135. Plaintiff alleges that the City's initial response was incomplete or improperly broad and that discovery is needed to determine whether all public responsive data was produced and whether any non-attorney public data was improperly withheld or delayed.

136. Plaintiff seeks all remedies allowed by the Minnesota Government Data Practices Act, including damages, costs, declaratory relief, and any other statutory relief available by law.

**Prayer for Relief**

- Enter judgment declaring that Defendants violated Plaintiff's rights under the United States Constitution and Minnesota law as pleaded;

- Award compensatory damages to be proven, including damages for lost meaningful process, loss of personal property-use opportunity, loss of first-mover/social-equity opportunity, loss of personal business-launch opportunity, personal economic opportunity, including economic losses

tied to Plaintiff's ownership and operation of his single-member LLC, and other damages flowing from Defendants' alleged violations of plaintiffs personal rights, medical and emotional harm, reputational harm, and delay or loss of ability to fund Plaintiff's planned charitable foundation;

-        Award nominal damages for constitutional violations even if the amount of compensatory damages is later disputed;

-        Award costs and any statutory relief available by law;

-        Award pre-judgment and post-judgment interest if allowed by law;

-        Grant declaratory relief and any other lawful relief the Court considers just and proper;

-        Plaintiff does not request an injunction requiring the City to approve cannabis operations at his property or in Waterville.

**Request for Bench Trial**

Plaintiff requests a bench trial on all issues.

Plaintiff does not demand a jury trial.

Dated: July 21, 2026

Respectfully submitted,

/s/ Travis Paul Perry

Travis Paul Perry

529 N. Mallory Street

Waterville, MN 56096

Email: mn.snoeeons@gmail.com

Phone: 507-210-0446

Pro Se Plaintiff